**JENKINS et al. v. BITGOOD, Formerly Acting Collector of Internal Revenue.**

**No. 3881.**

District Court, D. Connecticut.

Jan. 31, 1938.

For former opinion, see 21 F.Supp. 250.

Curtiss K. Thompson and John H. Weir, both of New Haven, Conn., for plaintiffs.

James W. Morris, Asst. Atty. Gen., Andrew D. Sharpe and Maurice J. Mahoney, Sp. Assts. to Atty. Gen., and Robert P. Butler, U. S. Dist. Atty., and Louis Y. Gaberman, Asst. U. S. Dist. Atty., both of Hartford, Conn., for defendant.

THOMAS, District Judge.

On November 11, 1937, this court filed its decision rendering judgment for the defendant. Subsequently, plaintiffs filed their motion for "reconsideration and rehearing," and the motion was granted, so the matter is again before the court upon the plaintiffs' claim that the court's decision was based on the wrong theory revolving around the transaction set forth in detail in the opinion. Briefs have again

been submitted by the respective parties—the last one having been filed January 4, 1938.

The transaction in question was ostensibly a sale by the bank and a purchase by the plaintiffs' decedent of certain securities for $25,000. The market value of the securities at the time of sale and purchase was $5,550. The plaintiffs ask the court to look through the form to the substance, and declare the difference of $19,450 to be a contribution by the decedent to the bank. It seems to me that the nature of the transaction cannot be judged by its effects, or by the motives which prompted the parties to do what they did. The exception, of course, is where the form of the transaction was a sham, intended to conceal the substance for some reason based on fraud or deceit. Even then, the only person who can properly be heard to complain is the one defrauded or deceived. There is no such circumstance or person here. The character of the transaction is therefore to be determined by what the parties did, not by why they did it or by the collateral result.

If one attempts to look through the form of this transaction, he finds the substance to be the same—a sale and purchase. The characterization might be different if the device of sale and purchase had been used to disguise a gift and thus evade gift tax, and if, under such circumstances, the government had raised the point. The court would refuse to recognize any such attempt at circumvention. But here the transaction took the form that it did by deliberate election of the parties and without any ulterior motive. The decedent's personal representatives cannot be heard to disavow it.

The plaintiffs are asking the court to hold that the portion of the price in excess of the fair market value of the securities purchased was really an additional payment by the decedent for capital stock of the bank which he already owned. This is the only theory upon which they can claim the right to deduct the amount when the bank stock became worthless. While they call such excess a capital contribution to the bank, they demand that it be treated, not as a gift, but as additional cost of his own stock. It is obvious that, when the purchase was made, the plaintiffs' decedent hoped and expected that the bank would be saved and rehabilitated. Had that occurred, and the bank stock risen in value, but the securities had become worthless, he could have, without any explanation whatever, deducted $25,000 as a loss of his investment in the securities. It is not likely that the government would have contended that the cost of the securities was only $5,550, or that a court would have entertained such a contention, unless the government could show that the transaction was put in the form that it was for the purpose of building up a false loss to be deducted, of which there is not a suggestion in the record. In my opinion, the substance of the transaction was a purchase and sale of securities.

The plaintiffs' decedent kept his records and made his income tax returns on the basis of actual cash receipts and disbursements. He did not pay $25,000 to the bank, but gave his note with collateral security. The note was paid in a later year, after his death, by the plaintiffs, his executors. The plaintiffs now say that his note, secured by collateral, was the equivalent of cash. There must, however, be some line of distinction between the cash and accrual methods of accounting. The justification of the accrual method in any case is that all items receivable or payable are, to the extent of their value, the equivalent of cash, and, in the absence of evidence to the contrary, the face value of such items is deemed to be their value. But the taxpayer must treat all such items consistently. He cannot report only cash items of income and deduct accrued items of liability. A promissory note is not a payment of cash, even though collaterally secured. It is nothing more than a liability—an obligation to pay. I realize that the authorities are somewhat divided on this point, but the principle seems clear, and the occasional treatment of a promissory note of the maker as the equivalent of a cash payment by him would be certain to lead to confusion. One of the cardinal principles of taxation is that taxes must be levied according to a general rule. To permit a taxpayer on the cash basis to deduct such accrued liabilities as he might select, on the theory that they were the equivalent of cash payments, would be to single him out for favorable treatment. It would be difficult to distinguish in substance between a liability on a promissory note and one on an open book account where the

taxpayer was well able to pay. Yet, if a taxpayer on the cash basis were allowed to deduct liability for debts which he had not paid, the distinction between the cash basis and the accrual basis would be lost. One using the cash method need not report receivables as income; but he cannot be allowed to deduct payables. On the other hand, one using the accrual method must report receivables but may deduct payables. One method or the other must be used consistently, and no reason appears for a variation from this rule in the instant case.

The case is governed by Eckert v. Burnet, 283 U.S. 140, 51 S.Ct. 373, 75 L. Ed. 911. The plaintiffs attempt to distinguish on the ground that the taxpayer in that case parted with nothing when he gave his note, but that in the instant case the taxpayer must have parted with something for the reason that the bank got an asset which the Comptroller of the Currency considered of sufficient value to justify the bank's continued operation. This reasoning is fallacious. The bank got an asset, but not necessarily income. If it was on the accrual basis, the note would be income tax to the bank, but, if on the cash basis, then it would not be an income item. But, even if it were an income item to the bank, it was not for that reason a deductible item for the taxpayer. His right to deduct is determined by his own election of the method of keeping his accounts. There are many cases where one on the cash basis, liable for an amount due to one on the accrual basis, is not allowed to deduct what the other is required to report as an income item. The consistency required is with respect to the treatment by each taxpayer of all of his transactions. It is not required, or probable, that other parties to the transactions will treat the same items in the same manner or according to the same method.

The fact that the Comptroller of the Currency considered the promise of the plaintiffs' decedent, secured as it was, sufficient assurance of the bank's safety to permit it to continue operations, does not prove that the plaintiffs' decedent parted with the equivalent of cash. There was no actual outlay.

For the reasons above stated, the Court adheres to the conclusions and decision as set forth in the opinion filed November 11, 1937, and it is so ordered.