## COMMISSIONER OF INTERNAL REVENUE *v.* SOUTH TEXAS LUMBER CO.

No. 384.   Argued January 14, 1948.—Decided March 29, 1948.

*Lee A. Jackson* argued the cause for petitioner.   With him on the brief were *Solicitor General Perlman, Assistant Attorney General Caudle, Arnold Raum* and *Carlton Fox.*

*Charles C. MacLean, Jr.* argued the cause for respondent.   With him on the brief were *Arthur A. Ballantine* and *J. Arthur Platt.*

Mr. Justice Black delivered the opinion of the Court.

This case raises a question as to respondent's liability for the taxable year 1943 under the Excess Profits Tax Act of 1940 as amended. 54 Stat. 975, 26 U. S. C. § 710, *et seq.* The law was passed to tax abnormally high profits due to large governmental expenditures about to be made from appropriations for national defense.[1] The excess profits tax was a graduated surtax upon a portion of corporate income, and was imposed in addition to the regular income tax. It applied to all corporate profits and gains over and above what Congress deemed to be a fair and normal return for the corporate business taxed.

Under the controlling 1943 law the amount of income subject to this excess profits tax is computed by subtracting from the net income subject to regular income tax the amount of earnings Congress deemed to be a taxpayer's normal and fair return.[2] This deductible amount, called the excess profits credit, was to be computed in one of two ways, whichever resulted in the lesser tax. § 712. The first, not used here, permits a deduction of an amount equal to the company's average net income for the taxable years 1936 to 1939 inclusive. § 713. The second, used here, permits a deduction of an amount equal to 8 per centum of the taxpayer's invested capital for the taxable year.[3] § 714. An includable element of the "invested capital" is the "accumulated earnings and profits as of the beginning of such taxable year." It thus appears that by this method Congress intended, with minor exceptions not here relevant, to impose the excess profits tax on all annual net income in excess of 8% of a

---

[1] H. R. Rep. No. 2894, 76th Cong., 3d Sess., 1–2.

[2] Other adjustments not here material are provided, but the chief deduction or "adjustment" is the one noted above.

[3] The straight 8% figure of 1940 was modified in several respects not here material in 1941 and subsequent years. 55 Stat. 699; 56 Stat. 911; 58 Stat. 55.

corporation's working capital, including its accumulated profits. The controversy here is over the taxpayer's claim that in computing its 1943 tax the statute allows it to include in this 8% deduction its "accumulated profits" from certain installment sales, which profits the taxpayer, in accordance with an option conferred upon him, had elected not to report as a part of its taxable income in prior years.

Beginning in 1937 and extending over a four-year period, respondent sold parcels of real estate, gave deeds, and took installment notes, which were secured by mortgages and vendors' liens. It kept its books generally on a calendar year accrual basis of accounting, a basis under which all obligations of a company applicable to a year are listed as expenditures, whether paid that year or not, and all obligations to it incurred by others applicable to the year are set up as income on the same basis. Under 26 U. S. C. § 41 an income taxpayer may report income and expenditures either on an accrual basis or on a cash basis—under which latter method annual net income is measured by the difference between actual cash received and paid out within the taxable year. In any event, the basis used must, in the language of § 41, "clearly reflect the income."

Respondent did not report the value of its land installment notes as income on the accrual basis as it could have done under § 41. Instead, from 1937 up to and including 1943, it has consistently reported its annual income from the installment sales on a third or "installment" basis, expressly authorized for certain types of installment sales by 26 U. S. C. § 44. That section permits a taxpayer to return as taxable income for a given year only "that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price." Thus respondent's install-

ment income has actually been reported for taxes all along substantially on a modified cash receipts basis, and the taxpayer's net income, which is subjected both to the normal income tax and to the excess profits tax, has not in any of these years reflected the unpaid balances on the installment notes, or any part of them. On the contrary, these balances were listed on respondent's tax returns during these years as "Unrealized Profit Installment Sales."

On its 1943 excess profits tax return respondent nevertheless reported as "accumulated earnings and profits" the amount of "Unrealized Profit Installment Sales" shown on its books at the end of 1942,[4] and included this amount in "invested capital." It thus sought to deduct 8% of its theretofore designated "unrealized profit" in computing its excess profits tax. The Commissioner redetermined the tax for 1943 after eliminating this item from "invested capital." The Tax Court sustained the Commissioner's redetermination, 7 T. C. 669, relying on its opinion in *Kimbrell's Home Furnishings, Inc.* v. *Commissioner,* 7 T. C. 339.[5] The Circuit Court of Appeals, with one justice dissenting, reversed on the authority of its decision in *Commissioner* v. *Shenandoah Co.,* 138 F. 2d 792. The Government's petition for certiorari alleged that the result reached by the Circuit Court of Appeals was counter to the Commissioner's regulations and to long-standing tax practices recognized by statutes and judicial opinions, under which practices a taxpayer normally cannot report taxable income on one accounting basis and adjustments of that income on another. The

---

[4] In its 1943 return respondent also reported the amount of such unrealized profits shown on its books as of the end of the two preceding years for purposes of calculating the excess profits credit carryover authorized by § 710 (c).

[5] The *Kimbrell* case was subsequently reversed but not on the contention here urged. 159 F. 2d 608.

questions thereby raised are of importance in tax administration and we granted certiorari to consider them.

A Treasury regulation, set out in part below,[6] applicable to both the normal income tax and the excess profits tax,[7] specifically provides that "a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis."[8] Since respondent computed its taxable income from installment sales on the installment or modified cash receipts basis, but computed its earnings and profits from these same sales on another basis, the accrual, it contends that the regulation is invalid because inconsistent with the governing code provisions. Validity of the regulation is therefore the crucial question.

---

[6] Section 29.115-3 of Regulations 111: "EARNINGS OR PROFITS.—In determining the amount of earnings or profits (whether of the taxable year, or accumulated since February 28, 1913, or accumulated prior to March 1, 1913) due consideration must be given to the facts, and, while mere bookkeeping entries increasing or decreasing surplus will not be conclusive, the amount of the earnings or profits in any case will be dependent upon the method of accounting properly employed in computing net income. For instance, a corporation keeping its books and filing its income tax returns under sections 41, 42, and 43 on the cash receipts and disbursements basis may not use the accrual basis in determining earnings and profits; a corporation computing income on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis; . . . ."

[7] The meaning of all terms used in the subchapter dealing with the income tax was expressly made applicable to terms used in the excess profits subchapter. § 728. Treasury Regulations 112 provided: ". . . In general, the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax." § 35.718-2. See also H. R. Rep. No. 2894, 76th Cong., 3d Sess., 41.

[8] This part of the regulation was added as an amendment to Reg. 103, § 19.115-3, now § 29.115-3 of Reg. 111, after adoption of the 1940 Excess Profits Tax Law. T. D. 5059, July 8, 1941.

This Court has many times declared that Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous constructions by those charged with administration of these statutes which should not be overruled except for weighty reasons. See, e. g., *Fawcus Machine Co.* v. *United States,* 282 U. S. 375, 378.

This regulation is in harmony with the long-established congressional policy that a taxpayer generally cannot compute income taxes by reporting annual income on a cash basis and deductions on an accrual basis. Such a practice has been uniformly held inadmissible because it results in a distorted picture which makes a tax return fail truly to reflect net income. This has been the construction given income, estate, and previous excess profits tax laws by administrative officials, the Board of Tax Appeals, and the courts.[9]

The regulation's reasonableness and consistency with the statutes which impose the excess profits tax on incomes is also supported by prior legislative and administrative history. The present "invested capital" deduction is patterned after a similar provision in § 326 (a) of the Revenue Act of 1918, 40 Stat. 1057, 1088, 1092. That section imposed a "War-Profits and Excess-Profits Tax." Invested capital there included "paid-in or earned surplus and undivided profits." Under that law the administration, the Board of Tax Appeals, and the courts have uniformly held that a taxpayer, having elected to

---

[9] G. C. M. 2951, VII–I Cum. Bull. 160 (1928); I. T. 3253, 1939–1 Cum. Bull. 178; *Consolidated Asphalt Co.,* 1 B. T. A. 79, 82; *Henry Reubel Executor,* 1 B. T. A. 676, 678–680; *B. B. Todd, Inc.,* 1 B. T. A. 762, 766; *Bank of Hartsville,* 1 B. T. A. 920, 921; *Atlantic Coast Line R. Co.,* 2 B. T. A. 892, 894–895; *United States* v. *Anderson,* 269 U. S. 422, 440; *Jacob Bros.* v. *Comm'r,* 50 F. 2d 394, 396; *Jenkins* v. *Bitgood,* 22 F. Supp. 16, 17–18, aff'd, 101 F. 2d 17.

adopt the installment basis of accounting, could not thereafter distort his true excess profits tax income by including uncollected installment obligations in his "invested capital" deduction base.[10]   A taxpayer, having chosen to report his taxable income from installment sales on the installment cash receipts plan, thereby spreading its gross earnings and profits from such sales over a number of years and avoiding high tax rates, was not permitted to obtain a further reduction by shifting to an accrual plan and treating uncollected balances on these installment sales as though they had actually been received in the year of the sale.

The history of the congressional adoption of the optional installment basis also supports the power of the Commissioner to adopt the regulation here involved. Prior to 1926 the right of a taxpayer to report on the installment plan rested only on Treasury regulations.[11] In 1925, the Board of Tax Appeals held these regulations were without statutory support.[12]   Congress promptly, in § 212 (d) of the 1926 Revenue Act, adopted the present statutory authority for an elective installment basis for reporting income, the Senate committee report on the measure designating it as a "third basis, the installment

[10] *Schmoller & Mueller Piano Co.* v. *United States,* 67 Ct. Cl. 428; *John M. Brant Co.* v. *United States,* 40 F. 2d 126; *Standard Computing Scale Co.* v. *United States,* 52 F. 2d 1018; *Jacob Bros.* v. *Comm'r,* 50 F. 2d 394; *Tull & Gibbs* v. *United States,* 48 F. 2d 148; *Appeal of Blum's, Inc.,* 7 B. T. A. 737, 771; *New England Furniture & Carpet Co.* v. *Comm'r,* 9 B. T. A. 334; *Green Furniture Co.* v. *Comm'r,* 14 B. T. A. 508; *S. Davidson & Bros.* v. *Comm'r,* 21 B. T. A. 638, 644; *Federal St. & Pleasant Valley Passenger R. Co.* v. *Comm'r,* 24 B. T. A. 262, 266.

[11] Article 117 of Regulations 33 (Revised), promulgated Jan. 2, 1918, and Article 42 of Regulations 45, promulgated April 17, 1919.

[12] *B. B. Todd, Inc.,* 1 B. T. A. 762; *H. B. Graves Co.,* 1 B. T. A. 859; *Hoover-Bond Co.,* 1 B. T. A. 929; *Six Hundred and Fifty West End Avenue Co.,* 2 B. T. A. 958.

basis." [13]   This new statutory provision was strikingly similar to the Treasury regulations previously held unauthorized by the Board of Tax Appeals.   That the Commissioner was particularly intended by Congress to have broad rule-making power under the regulation was manifested by the first words in the new installment basis section which only permitted taxpayers to take advantage of it "Under regulations prescribed by the Commissioner with the approval of the Secretary . . . ."   The clause is still contained in § 44 of the Internal Revenue Code. This gives added reasons why interpretations of the Act and regulations under it should not be overruled by the courts unless clearly contrary to the will of Congress.   See *Burnet* v. *S. & L. Bldg. Corp.,* 288 U. S. 406, 415.

The installment basis of reporting was enacted, as shown by its history, to relieve taxpayers who adopted it from having to pay an income tax in the year of sale based on the full amount of anticipated profits when in fact they had received in cash only a small portion of the sales price.   Another reason was the difficult and time-consuming effort of appraising the uncertain market value of installment obligations.[14]   There is no indication in any of the congressional history, however, that by passage of this law Congress contemplated that those taxpayers who elected to adopt this accounting method for their own advantage could by this means obtain a further tax advantage denied all other taxpayers, whereby they could, as to the same taxable transaction, report in part on a cash receipts basis and in part on an accrual basis.

We find nothing unreasonable in the regulations here. See *Commissioner* v. *Wheeler,* 324 U. S. 542.

---

[13] S. Rep. No. 52, 69th Cong., 1st Sess., 19, the Senate Finance Committee's report on Revenue Act of 1926, 44 Stat. 9, 23.

[14] S. Rep. No. 52, 69th Cong., 1st Sess. 19; *Willcuts* v. *Gradwohl,* 58 F. 2d 587, 589–590.

It is argued that notwithstanding what has been said, Congress by enacting § 501 of the 1940 Second Revenue Act, 54 Stat. 974, 1004, 26 U. S. C. § 115 (*l*), had provided a definition of "earnings and profits" which includes these unpaid installment obligations and that the regulation here conflicts with § 115 (*l*),[15] which is applicable alike to both the income and the excess profits taxes. There are at least two reasons why we cannot accept this argument. In the first place, neither § 115 (*l*) nor any other purports to alter the Commissioner's power to promulgate reasonable regulations which require taxpayers who adopt the installment basis of accounting to use an accounting method that reflects true income. The hybrid method here urged would not accomplish that result.

In the second place, we cannot agree with the respondent's interpretation of § 115 (*l*). He argues that "earnings and profits" derived from a sale of property are defined in § 115 (*l*) considered in the light of §§ 111, 112, and 113; that these sections together define such earnings and profits as all gain "realized" in the year of sale and "recognized" under the law applicable to the year of sale; that all the anticipated profits from these installment sales were "realized" when the sales were made because the installment obligations of the purchasers were received by respondent in the year of sale and they must be assumed to have been worth their face value; that they

---

[15] Section 115 (*l*) provides: "The gain or loss realized from the sale or other disposition . . . of property by a corporation— . . .

"(2) for the purpose of the computation of earnings and profits of the corporation for any period beginning after February 28, 1913, shall be determined by using as the adjusted basis the adjusted basis (under the law applicable to the year in which the sale or other disposition was made) for determining gain.

"Gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent to which such a realized gain or loss was recognized in computing net income under the law applicable to the year in which such sale or disposition was made."

were "recognized" as taxable by § 111 (c), the law applicable to the year of sale; and that consequently the Commissioner was compelled to accept these lawfully "realized" and "recognized" accumulated profits as "invested capital" for excess profits tax purposes, even though not previously reported as taxable income for either income tax or excess profits tax purposes. Finally respondent contends that § 44 merely conferred upon it a privilege to defer payment of income tax on its tax-"recognized" profits realized from installment sales until the unpaid installment obligations were collected.

The congressional reports on § 115 (*l*) do not provide support for the idea that gains not included in taxable income under the taxpayer's method of accounting may nevertheless be considered "realized" and "recognized" for computing tax adjustments or deductions so long as they might have entered into such computations under a different method of accounting.[16] Furthermore, neither § 111, § 112, nor § 113 requires a "recognition" of the full face value of installment paper. It is true that § 111 (b) does provide that gain or loss "realized" from the sale of property shall be measured by the "sum of any money received plus the fair market value of the property (other than money) received" and § 111 (c) provides that the extent of gain or loss shall be "recognized" as determined "under the provisions of section 112." But § 111 (d)

---

[16] The Conference Committee report on the Second Revenue Act of 1940, 54 Stat. 974, said with reference to § 115 (*l*): "The provisions in the House and Senate bills, that gain or loss so realized shall increase or decrease the earnings and profits to, but not beyond, the extent *recognized* in computing net income under the law applicable to the year in which such sale or disposition was made, are retained. As used in this subsection the term 'recognized' relates to a realized gain or loss which is recognized pursuant to the provisions of law, for example, see section 112 of the Internal Revenue Code. It does not relate to losses disallowed or not taken into account." Conf. Rep. No. 3002, 76th Cong., 3d Sess., 60.

provides that nothing in § 111 "shall be construed to prevent (in the case of property sold under contract providing for payment in installments) the taxation of that portion of any installment payment representing gain or profit in the year in which such payment is received." This means that where a taxpayer has validly reported its income from installment sales on the installment basis provided by § 44, that section, not §§ 111, 112, and 113, prescribes the extent to which receipts from such sales are "recognized" as taxable and the year in which such receipts are "recognized" in computing taxable income. Section 44 provides for the return as income "in any taxable year that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price." Unlike § 111, § 44 does not recognize as subject to income tax liability the "market value" of deferred installment obligations. They may never be recognized by a taxpayer on the installment basis for tax purposes under § 44 or any other section, for they may never be paid, or may be paid only in part. The anticipated profits from these deferred obligations are recognized and taxable under § 44 only if the obligations are paid and when they are paid, unless they are sold or transferred before payment. Thus, whatever meaning is given to the words "realized" and "recognized," the regulation here considered is not in conflict with §§ 115 (*l*), 111, 112, and 113.

The regulation is valid. The respondent can include in its equity invested capital only that portion of its profits from installment payments which it has actually received and on which it has already paid income taxes in the years of receipt.

*Reversed.*

Mr. Justice Douglas and Mr. Justice Burton dissent.