White Brothers Company v. Commissioner.
White Bros. Co. v. Commissioner
Docket No. 14856.
United States Tax Court
1948 Tax Ct. Memo LEXIS 122; 7 T.C.M. (CCH) 570; T.C.M. (RIA) 48154; August 11, 1948
*122 1. Respondent, in computing excess-profits tax credit, properly reduced petitioner's equity invested capital by an amount representing dividends paid in prior years, which dividends were in excess of surplus available for dividends in such respective years, without including in surplus "unrealized profit on installment sales" under section 718 (b) (1) of the Internal Revenue Code. 2. The record does not establish that respondent erred by including in gross income in the taxable year 1943 sales taxes collected but not remitted by petitioner when prescription ran against the tax authorities in 1943. 3. Respondent erred in excluding deductions for bad debts arising from installment sales in prior years. Commissioner v. Hecht Co., 163 Fed. (2d) 194, and Commissioner v. Mackin Corp., 164 Fed. (2d) 527, followed. E. K. Tillman, Esq., 814 Howard Ave., New Orleans, La., for the petitioner. John W. Alexander, Esq., for the respondent. LEECH
Memorandum Opinion LEECH, Judge: This proceeding involves deficiencies in declared value excess-profits taxes and excess-profits taxes as follows: Excess-
Declared Value
Profits
Year
Excess-Profits Taxes
Taxes
1943
$2,311.23
$ 3,281.75
1944
10,394.40
The issues *123 involved are: (1) Is equity invested capital, used as a basis for computing excess-profits tax credit, to be reduced by an amount representing dividends paid in the years 1921 to 1924, inclusive, and in the year 1929, which dividends were in excess of surplus available for dividends in each of those years where the surplus was computed without including therein "unrealized profit on installment sales"; (2) is the petitioner taxable in 1943 on the sum of $3,793.93, representing sales tax collected by petitioner from customers and not refunded, or remitted to the taxing jurisdiction before the end of the taxable year when prescription ran against the taxing jurisdiction for the collection of the tax; and (3) did the respondent err in excluding deductions for bad debts which arose from installment sales made prior to 1940 in the amount of $211.17 for the taxable year 1943 and in the amount of $165.76 for the taxable year 1944? [The Facts] All the facts have been stipulated and are incorporated herein by reference. They may be summarized as follows: Petitioner is a Louisiana corporation having its principal office at New Orleans, Louisiana. Its income tax, declared value excess-profits *124 tax and excess-profits tax returns for the periods involved were filed with the collector of internal revenue for the district of Louisiana. Prior to 1920 petitioner kept its books and filed its income tax returns on the accrual basis. In 1920 petitioner elected to report its income on the installment basis and has done so for all subsequent years. Petitioner filed its income tax returns for the years 1943 and 1944 under the installment sales method as provided by section 44 (a) of the Internal Revenue Code, but elected to compute its excess-profits taxes on the accrual basis under section 736 (a) of the code and filed its excess-profits tax returns in accordance therewith. In its original excess-profits tax returns, petitioner claimed excess-profits tax credit based on average earnings. Later petitioner filed claims for refund, claiming excess-profits tax credit based on invested capital. The change in method of computing its excess-profits tax credit is not objected to by the respondent. Petitioner and respondent are agreed that $284,706.75 was paid into the corporation as invested capital. Petitioner also agrees that its claims for refund should be adjusted by the use of such amount *125 as its invested capital in the determination of its excess-profits tax credit. In the audit report of August 9, 1946, the respondent reduced the equity invested capital of $284,706.75 by the amount of $104,105.80, on the ground that certain distributions made prior to the taxable year were not out of accumulated earnings and profits. In that audit respondent analyzed dividend payments for the period 1921 to 1929, which analysis, as set forth in the following schedule, petitioner accepts as correct (provided it is understood that "surplus" as therein used excludes "unrealized gross profit from installment sales"): Surplus
Profit or
Surplus
Beginning
(Loss)
Surplus
Available
Dividends
for
from
Year
of Year
for Year
End of Year
Dividends
Dividends
Capital
1921
$ 5,607.89   ($10,596.04)
$ 4,988.15 d
None
$22,636.11
$22,636.11
1922
4,988.15 d
( 19,917.86)
24,906.01 d
None
24,756.60
24,756.60
1923
24,906.01 d
3,659.54 21,246.47 d
$ 3,659.54
* *126 19,493.99
19,493.99
1924
21,246.47 d
( 3,864.39)
25,110.86 d
None
27,888.79
27,888.79
1929
19,547.64   ( 8,883.95)
10,663.69   10,663.69
19,994.00
9,330.31 As shown by the balance sheets attached to the stipulation, petitioner, at the end of each of the years in which dividends were paid, had "unrealized gross profit on installment sales" in sufficient amount to cover the dividends paid in excess of the earned surplus shown in the preceding schedule. Of sales taxes collected by petitioner from its customers prior to December 31, 1940, there remained $3,793.93 on December 31, 1943, which had not been remitted to the State of Louisiana, the City of New Orleans, or refunded to customers. Under section 19 of article 19 of the Constitution of Louisiana, prescription ran against the state and city for the collection of those taxes during the year 1943. Petitioner deducted $211.17 and $165.76 from excess-profits net income for the taxable years 1943 and 1944, respectively, for bad debts arising from installment sales made in the years 1936 to 1939, inclusive. The respondent in determining petitioner's excess-profits tax disallowed such deductions. [Opinion] The first issue involves the propriety of the respondent's action in reducing petitioner's equity invested capital *127 by the amount of $104,105.80, representing dividends paid prior to the taxable years involved, pursuant to section 718 (b) (1) of the Internal Revenue Code. [1] It is the respondent's position that the dividends, distributed in prior years to the extent of $104,105.80, were in excess of the accumulated earnings and profits available for the payment of dividends and were therefore paid out of capital. Petitioner contends that at the time of the dividend distributions it had sufficient "unrealized gross profit from installment sales" to cover the payments. In short, the basic issue is whether the unrealized gross profit from installment sales is within the purview of "accumulated earnings and profits" to petitioner reporting its income upon the installment basis pursuant to section 44 (a) of the code. The Internal Revenue *128 Code does not define the phrase "accumulated earnings and profits." Regulations 111, section 29.115-3, relating to income tax, provides: "* * * A corporation computing income tax on the installment basis as provided in section 44 shall, with respect to the installment transactions, compute earnings and profits on such basis * * *." Regulations 112, section 35.718-2, relating to excess-profits taxes, provides: "* * * In general, the concept of 'accumulated earnings and profits' for the purpose of the excess profits tax is the same as for the purpose of the income tax." The respondent, relying on these regulations, determined that the prior dividend distributions were not made out of earnings and profits and section 718 (b) (1) required petitioner's equity invested capital to be reduced by such amounts. These regulations were upheld by the Supreme Court in Commissioner v. South Texas Lumber Co., 333 U.S. 496, the rationale of which the respondent contends controls the issue here. Petitioner relies principally upon the cases of Commissioner v. Shenandoah Co., 138 Fed. (2d) 792; Kimbrell's Home Furnishings, Inc. v. Commissioner, 159 Fed. (2d) 608; and South Texas Lumber Co. v. Commissioner, 162 Fed. (2d) 866, *129 reversed supra. We conclude that the latest pronouncement of the Supreme Court, which occurred in Commissioner v. South Texas Lumber Co., supra, requires us to sustain the respondent's determination as to this issue. The second issue involves the question whether the unremitted and unrefunded sales taxes amounting to $3,793.93 were taxable income to petitioner in the taxable year 1943, when it is stipulated that prescription ran against the State of Louisiana and City of New Orleans under the provisions of the Constitution of Louisiana. On brief, petitioner states: "* * * If, at that time, no one could demand and legally enforce the corporation to pay over the taxes it had collected from its customers, it is admitted that they should be included in income and federal income taxes paid thereon." Petitioner makes no contention that the taxing authorities could legally demand and enforce its payment over of the taxes, after prescription had run. It argues that the liability to refund the taxes to its customers from whom the tax was collected continued for a period of 10 years under article 3544 of the Civil Code of the State of Louisiana. This record, however, is devoid of any evidence *130 which would enable us to determine whether or not this argument of petitioner has merit. There is no showing whether the customers had any legally enforceable right to have refunded the sales taxes which petitioner collected but did not remit to the taxing authorities. Mere reference to a 10-year prescription statute furnishes little or no assistance. There is no evidence whether petitioner's records indicate the names of the customers from whom the tax was collected, or the specific amounts collected, which would enable petitioner to make a voluntary refund, or which would permit the customer to legally establish that any part of the unremitted taxes included taxes which such particular customer had paid to petitioner. We think that if petitioner intended to rely upon the contention which it now advances, such facts should have been properly presented. There are many cases in which persons have been taxed on property which could be recovered from them. Cf. Chicago, R.I. & P.R. Co. v. Commissioner, 47 Fed. (2d) 990; National City Bank of New York, Exr. v. Helvering, 98 Fed. (2d) 93; Universal, Inc., v. Commissioner, 109 Fed. (2d) 616; Charleston & W.C. Ry. Co. v. Burnet, 50 Fed. (2d) 342. *131 When the prescription right of the taxing authorities expired in 1943, the sales taxes collected but unremitted in the amount of $3,793.93, became subject to petitioner's command. The respondent's inclusion of such amount in petitioner's gross income for the taxable year 1943 is approved. The final issue presents the question whether the respondent erred in disallowing petitioner a deduction from excess-profits net income of the sum of $211.17 and $165.76, representing bad debts arising from installment sales made in the years 1936 to 1939. The respondent, on brief, does not discuss this issue, indicating to us his lack of confidence in his determination. Upon the authority of Commissioner v. Hecht Co., 163 Fed. (2d) 194, and Commissioner v. Mackin Corp., 164 Fed. (2d) 527, this issue must be determined in favor of petitioner. Decision will be entered under Rule 50. Footnotes
d. Deficit. ↩
*. Dividends were paid February 14, 1923, and, therefore, in accordance with Article 1542 of the 1918 Act. constituted dividends as of December 31, 1922, when there were no funds available for dividends.
1. SEC. 718. EQUITY INVESTED CAPITAL. (b) Reduction in Equity Invested Capital. - The amount by which the equity invested capital for any day shall be reduced as provided in subsection (a) shall be the sum of the following amounts - (1) Distributions in Previous Years. - Distributions made prior to such taxable year which were not out of accumulated earnings and profits;↩