*Decisions will be entered under Rule 50.*

LUCILLE L. MORRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CHARLES R. MORRISON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 17366, 17367. Promulgated June 30, 1949.

*Bleecker L. Morse, Esq.,* for the petitioners.
*John P. Higgins, Esq.,* for the respondent.

**OPINION.**

JOHNSON, *Judge*: Petitioners regularly reported on the installment basis profits from their contracts to sell lots, as they are permitted to do by section 44 (b), Internal Revenue Code, under regulations prescribed by the Commissioner with the approval of the Secretary of the Treasury. They returned as income in the taxable years:

\* \* \* that proportion of the installment payments actually received in that year which the gross profit realized or to be realized when payment is completed, bears to the total contract price. [Sec. 44 (a).]

But in respect of certain contracts the purchasers defaulted and, pursuant to the stipulated conditions, all previous payments were forfeited to petitioners, the contracts became null and void, and the purchasers were relieved from all further responsibility. Petitioners, having retained title, reacquired possession of the lots, and computed profit from such transactions by including the total profit percentage of the collection made under contract in the schedule of installment sale profits and then adding as "Gain on Lapses" an additional amount, which we infer represents the cost recovery attributable to collections and perhaps some adjustments. There is no break-down of the figure on the return and it is not described in the stipulation.

By section 29.44–3, Regulations 111, it is provided that if a vendor, returning income on the installment basis, reacquires the property after default by the purchaser, gain or loss is to be computed upon any installment obligations which are satisfied or discharged, regardless of whether or not title to the property had been retained by the vendor or transferred to the purchaser. Such gain or loss is to be measured by the difference between the fair market value of the reacquired property and the adjusted basis of the purchaser's obligations to the vendor. In effect, the vendor is treated as disposing of the purchaser's installment obligation in exchange for the repossessed property. Such a transaction is explicitly taxable under section 44 (d), which provides:

(d) GAIN OR LOSS UPON DISPOSITION OF INSTALLMENT OBLIGATIONS.—If an installment obligation is satisfied at other than its face value \* \* \* or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange—the amount realized \* \* \*.

The Commissioner has determined that upon repossession after default petitioners' gains are the difference between the fair market value of the lots repossessed—an undisputed figure—and the bases of the extinguished installment obligations, adjusted to eliminate amounts returnable as profits.

It has long been settled that section 44 (d) is applicable to a vendor's repossession of property subject to a sale contract under which there has been a default in the payment of required installments. Such was the holding of the Circuit Court of Appeals for the Third Circuit in *Boca Ratone Co.* v. *Commissioner*, 86 Fed. (2d) 9, wherein it appeared, as here, that the vendor had retained title to the property sold and that, after default by the vendee and repossession by the vendor, the vendee was released from any further obligation. In its holding the

court reasoned that the installment obligations had been "satisfied" within the meaning of section 44 (d) by the repossession. This decision has been followed, *Walker* v. *Thomas* (C. C. A., 5th Cir.), 119 Fed. (2d) 58; *T. Eugene Piper*, 45 B. T. A. 280; and *Eggerman Investment Co.*, 36 B. T. A. 1196, and, indeed, is reflected in the above described provisions of section 29.44-3, Regulations 111. See T. D. 4832, 1938-2 C. B. 155, approved July 19, 1938.

But petitioners argue that under their contracts no installment obligations of the purchaser existed because the purchaser was always free to default and nothing subjected him to liability for the unpaid balance if he did. If we were here dealing with the taxation of profit under the normal method of computation, this argument would be very cogent. But the installment basis of reporting gains is an optional method of convenience which a taxpayer is permitted to use under regulations prescribed by the Commissioner. Sec. 44 (b). Having elected to use it, petitioners are bound by the regulations and by their decision. *Pacific Nat. Co.* v. *Welch*, 304 U. S. 191. The regulations have been held reasonable and the effects of the method in producing tax consequences at variance with those of normal accounting have been sustained. *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496. Indeed, acceptance of petitioners' view that there were no installment obligations would seem to defeat their right to use an installment basis for reporting gain, for total profit and other factors of computation involve such obligations.

As shown by the holding in *Boca Ratone Co.* v. *Commissioner, supra*, and by the provisions of section 29.44-3 of Regulations 111, a uniform application of the installment basis is intended without distinctions on account of legal technicalities such as transfer of title at time of the sale contract or on completion of the contemplated payments. More recently, the Circuit Court of Appeals for the Sixth Circuit held, in *United States* v. *Eversman*, 133 Fed. (2d) 261, that gain or loss should be computed under section 44 (b) by use of the fair market value of the repossessed land, even though the contract for its sale provided that the buyer could default, cancel the contract, and relieve himself of all obligation to make further installment payments by giving specified notice of his intent to do so. Such provisions are substantially the same as those on which petitioners here rely, but the court considered the seller as holding an installment obligation which was disposed of at other than its face value by virtue of the repossession of the land. Petitioners stress as to the contrary the court's statement that "Cancellation of a contract is certainly not the equivalent of payment of obligations under it." But this observation was made in holding that the initial payments during the year did not exceed the 40 per cent

maximum requisite for use of the installment basis. The repossessed land was not deemed a payment under the contract, but consideration for disposition of the installment obligations.

In general support of their contention, petitioners assert that the Commissioner in effect has determined a gain on the *acquisition* of property, using fair market value as the measure of receipt, while tax is laid on profit from a disposition. But clearly the Commissioner has not done so. Under the governing regulations, which a taxpayer of necessity accepts in electing use of the installment basis, petitioners' lots are considered as sold when the contract is signed, regardless of contractual provisions which might technically postpone consummation of the sale. And, analogously, where the purchaser lost his rights under the contract by default and petitioners reacquired possession of the lot, they are deemed to have exchanged the purchaser's agreement to pay specified installments, receiving the lot in consideration therefor. The resulting gain is thus derived from a disposition of the customer's agreement to pay installments, and by the regulations its basis to petitioners is the excess of face value over the income returnable if the installments had been paid in full, while the amount received therefor is the fair market value of the lot.

Of course it can be objected that the purchaser's agreement to pay installments could not be enforced after forfeiture, but, as the cited decisions establish, the pattern of gain computation on the installment basis is designed for uniform application. Were this not so, petitioners never held any "obligations of the purchaser" and were not entitled to use the installment basis. But, by choosing it, they elected to consider the purchaser's agreement as an obligation, and, having enjoyed the benefits in returning profit on collections, they can not escape the temporary disadvantage of the consequences of forfeiture. The disadvantage, moreover, is nicely compensated by the increased basis of the repossessed lot, which, on a resale, will yield *pro tanto* less gain or more loss.

With regard to the forfeited payments which petitioners transferred—voluntarily, it would seem—to the credit of the defaulter for payment on another lot which he had contracted to purchase, petitioners agree that they are properly includible in income to the extent not previously reported, but charge that the Commissioner has determined gain on "the mere transfer of credit balances from one account to another." Such a transfer would not constitute income, but in the state of the record we are unable to find whether or not he did so, and an opportunity will be given the parties under Rule 50 to clarify and, if necessary, correct his action in this respect.

*Decisions will be entered under Rule 50.*