RICHARD L. FRANCK AND DOLORES L. FRANCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Franck v. Commissioner
Docket No. 1972-79.
United States Tax Court
T.C. Memo 1981-235; 1981 Tax Ct. Memo LEXIS 506; 41 T.C.M. (CCH) 1475; T.C.M. (RIA) 81235; May 12, 1981. Mark Townsend, for the petitioners. J. Robert Cuatto, for the respondent. GOFFE
MEMORANDUM OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 2,242 in the Federal income tax of petitioners for the taxable year 1975. The issues are: (1) whether section 1.44-2 of the Income Tax Regulations is valid and enforceable, and (2) whether the construction of petitioners' residence commenced before March 26, 1975, for purposes of section 44(e)(1)(A), Internal Revenue Code of 1954. [1]
*507 All of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorpoated herein by this reference. The petitioners timely filed a joint Federal income tax return for their taxable year 1975. At the time they filed their petition herein, petitioners' principal place of residence was located at Huntington Beach, California (the Residence). It was constructed during the 1975 taxable year. The Residence is a two-story, three-bathroom, four-bedroom home with an area of 3,300 square feet. Petitioners constrcted the Residence themselves. The building permit allowing construction of the Residence was applied for an April 25, 1974, approved on June 14, 1974, and issued by the City of Huntington Beach on March 24, 1975. Petitioners' construction loan application was approved by California Federal Savings on March 24, 1975. Said loan provided the funds for construction of the Residence. Prior to the June 14, 1974, approval of the petitioners' application for a building permit, the petitioners physically checked out dimensions, staked out and measured the building site and made corrections to the building plans. From June 14, 1974, to *508 March 24, 1975, no work was performed on the site where the Residence was to be constructed. Prior to March 26, 1975, all work on the building plans had been completed, the petitioners had physically cleared the site, had begun staking, laying out and digging the perimeters of the slab foundation, and had arranged for power to the site. Petitioners moved into the Residence on or about November 1, 1975. From and after this time, the Residence constituted their "new principal residence" within the meaning of section 44(a). Issue 1. Validity of Regulation
Section 44 provides as follows: SEC. 44. PURCHASE OF NEW PRINCIPAL RESIDENCE. (a) GENERAL RULE.--In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer. (e) PROPERTY TO WHICH SECTION APPLIES.-- (1) In General.--The provisions of this section apply to a new principal residence-- (A) the construction of which began before March 26, 1975, (B) which is acquired and occupied by the taxpayer after March 12, 1975, and before January 1, 1977, and
*509 (C) if not constructed by the taxpayer, which was acquired by the taxpayer under a binding contract entered into by the taxpayer before January 1, 1976. Section 1.44-2, Income Tax Regs., was issued by the respondent under the authority of section 7805 of the Code in order to implement the provisions of section 44. Section 1.44-2, Income Tax Regs., as here relevant, provides as follows: Sec. 1.44-2. Property to which credit for purchase of a new principal residence applies. The provisions of section 44 and the regulations thereunder apply to a new principal residence which satisfies the following conditions: (a) Construction. The construction of the residence must have begun before March 26, 1975. For this purpose construction is considered to have commenced in the following circumstances: (1)(i) Except as provided in subparagraph (2) of this paragraph, construction is considered to commence when actual physical work of a significant amount has occurred on the building site of the residence. A significant amount of construction requires more than drilling to determine soil conditions, preparation of an architect's sketches, securing of a building permit, or grading *510 of the land. Land preparation and improvements such as the clearing and grading (excavation or filling), construction of roads and sidewalks, and installation of sewers and utilities are not considered commencement of construction of the residence even though they might involve a significant expenditure. However, driving pilings for the foundation, digging of the footings, excavation of the building foundation, pouring of floor slabs, or construction of compacted earthen pads when specifically prepared and designed for a particular residential structure and not merely as a part of the overall land preparation, constitute a significant amount of construction of the residence. * * * (ii) The rules in subdivision (i) of this subparagraph are illustrated by the following examples: Example (1). A location chosen for a housing development has extremely hilly terrain. In order to make the location suitable for development, the builder moves large amounts of earth and places it elsewhere on the location. In addition, the earth material which has been moved must be compacted according to government specifications in order to provide a stable base. Such activities constitute land *511 preparation and, therefore, do not constitute the commencement of construction. Example (2). A location chosen for a housing development has swampy and marshy terrain. In order to make the location suitable for development the builder utilizes large quantities of fill. This activity constitutes land preparation and does not constitute commencement of construction. Example (3). Assume the same facts as in either example (1) or example (2) except that the builder also constructs an earthen pad of compacted fill specifically prepared for a particular residential structure and not merely as a partof the overall land preparation. Construction of the compacted earthen pad is considered in the same light as excavation of the building foundation and accordingly constitutes commencement of construction. Petitioners contend that the regulation is invalid and thereby unenforceable because it is not consistent with section 44(e)(1)(A), quoted above, the statutory provision it is designed to implement. Treasury regulations are presumptively valid and must be sustained unless unreasonable and plainly inconsistent with the revenue statutes they construe. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501 (1948). *512 These regulations should not be invalidated "except for weighty reasons." Bingler v. Johnson,394 U.S. 741, 750 (1969). The legislative history of section 44(e)(1)(A) is scant. Section 44 of the Code was added by section 208(a) of the Tax Reduction Act of 1975, Pub. L. 94-12, 89 Stat. 28. The House Ways and Means Committee bill contained no provision for a credit for the purchase of a new residence, H. Rept. No. 94-19 (1975), 1975-1 C.B. 569. The provision was added by the Senate, the report of which provides: Construction is to be considered to begin only when physical work actually begins (i.e., not design, blueprints, planning, etc.). * * * S. Rept. No. 94-36 (1975), 1975-1 C.B. 590, 606. The Conference Report contains no discussion of the term "construction." Conf. Rept. No. 94-120 (1975), 1975-1 C.B. 624, 626. In the House debate on the Conference Report, Representative Ullman, then chairman of the House Ways and Means Committee, made the following remarks in explaining the Conference Committee's provision for the new home credit: The 5-percent credit * * * will be available only for the existing inventory of *513 homes in order to permit them to be sold as rapidly as possible. This inventory liquidation is needed before home construction can recover. The provision is also limited to existing inventories of new housing. It will have its major imact on clearing out of inventories. There is a heavy inventory of new houses already constructed but not sold in many areas. * * * [W]e will in effect be making capital available for a lot of builders who are now out of capital * * * by helping them sell houses in which they now have their capital tied up. This will free that capital for new investments and new construction. MR. ULLMAN. If construction began after March 26, 1975, the houses will not be eligible for the credit. MR. MONTGOMERY. Does this mean that the foundation should be in the ground by March 26 in order to be eligible? MR. ULLMAN. While it is not necessary that the foundation be completely in the ground, it is necessary that actual physical work at the building site occur and that this work be of a significant nature. It is intended that construction is to be considered as beginning only when significant physical work actually has begun at the building site. *514 This does not include drilling to determine soil conditions, the preparation of an architect's sketches, the securing of a building permit, or the grading of the land. However, the digging of the footings, the excavation of the building site, or similar work would constitute the beginning of construction * * *. [2]
There at least would have to have been the digging of the footings and only where the digging was at least of significance relative to the work to be done. [121 Cong. Rec. 8919, 8921, 8922, 8924, 8935 (1975).] The remarks of Mr. Ullman, upon which the members of the full House undoubtedly relied in voting, clearly indicate that the credit was meant to speed the sale of either homes which were already constructed or upon which a significant amount of construction had occurred *515 by March 26, 1975, because it was only in these homes that the builders could have, as of the relevant date, invested much capital. The credit was not meant to provide specific incentives to commence construction of new homes infuturo. The maxim, cessanterationelegis, cessatetipsalex, [3] is particularly germane to the present analysis. Although "construction" by dictionary definition may in a given case begin before March 26, 1975, dictionary definitions do not help here. We interpret statutes in light of the policies they seek to further and of the classes of persons and other entities they are designed to benefit, as identified by the statute itself and by its legislative history. The regulation in issue is valid for two reasons: (1) it accords with the clear intendment of the statute by providing that construction commences only when significant physical work on the house has actually occurred, and when, therefore, the builder has a substantial inventory investment in the house; and (2) it practically restates Representative Ullman's explanation, quoted above. *516 Far from being "plainly inconsistent" with section 44(e)(1)(A), we find the regulation plainly consistent [4] with the statutory provision. See Reddy v. United States, 436 F. Supp. 377 (N.D. Ill. 1977), which also upholds the regulation, although under a more abbreviated analysis. Issue 2. When Construction Commenced
Because the regulation is valid, we apply it to determine whether, for purposes of section 44, construction had commenced on petitioners' home prior to March 26, 1975. The facts show that no physical work was performed upon the site prior to March 24, 1975; thus, at most 2 days of physical work were performed prior to the midnight, March 25, 1975, deadline. Much of this was mere land preparation and the remainder consisted of a little digging around the perimeter of the foundation area. Such activity hardly constitutes the substantial physical work required by the regulation and by the legislative history with which it so clearly harmonizes. Because they had done so little work on the house and hence had so little *517 capital investment therein, petitioners simply do not fall within the statute's intended benefit as properly delimited by the regulation. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. The Senate discussion of the Conference Report consisted mostly of broad generalities. However, Senator Long, then chairman of the Finance Committee, did state that, "The conferees * * * agreed to limit the home credit to the existing inventory of new homes. * * * Liquidating the existing home inventory is a precondition to a recovery in the housing industry." 121 Cong. Rec. 8861 (1975).↩
3. "Where the reason of the law ceases, the law itself ceases."↩
4. We pass only on the validity of the portion of the regulation relevant to this case, i.e., the portion quoted above.↩