**CONSOLIDATED BLENDERS, INC., Appellee,**

v.

**UNITED STATES of America, Appellant.**

**No. 85–1423.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1985.

Decided March 10, 1986.

Rehearing and Rehearing En Banc Denied April 25, 1986.

Gayle P. Miller, Dept. of Justice, Washington, D.C., for appellant.

David R. Klaassen, Salina, Kan., for appellee.

Before ARNOLD and WOLLMAN, Circuit Judges, and REGAN,* Senior District Judge.

ARNOLD, Circuit Judge.

Consolidated Blenders, Inc., prevailed below in its suit for refund of federal income taxes paid for the taxable year ending April 30, 1974. On May 1, 1973, eight separate pre-existing corporations merged into Consolidated in a single reorganization. The question before us is the extent to which Consolidated is entitled to claim net-operating-loss carryovers belonging to five of the previously existing corporations

---

* The Hon. John K. Regan, Senior United States District Judge for the Eastern District of Missouri, sitting by designation.

and investment-tax-credit carryovers belonging to four of the corporations. The District Court held that Consolidated could claim the full amount of the net-operating-loss carryovers and over three-fourths of the investment-tax-credit carryovers; the Court invalidated Treasury Regulation § 1.382(b)–(1)(a)(5), under which Consolidated would be entitled to a much smaller portion of the carryovers. 600 F.Supp. 999 (D.Neb.1984). For the reasons set forth below, we reverse.

The reorganization here was tax-free as a statutory merger or consolidation within the meaning of § 368(a)(1)(A) of the Internal Revenue Code of 1954, 26 U.S.C. § 368(a)(1)(A).[1] Section 382(b)(1) provides that the acquiring corporation in such a reorganization is not entitled to the full amount of the net-operating-loss carryover of the pre-existing "loss corporation" if "the stockholders . . . of [the loss] corporation . . . as the result of owning stock of the loss corporation, own (immediately after the reorganization) less than 20 percent of the fair market value of the outstanding stock of the acquiring corporation." Where this test is not met, § 382(b)(2) requires that the loss carryover be reduced by five per cent. for each point under 20 per cent. that the loss corporation's shareholders receive in the stock of the acquiring corporation.[2] Congress, concerned about the practice of buying tax losses to offset unrelated income, adopted these restrictions to ensure that the stockholders of the corporation that actually suffered a particular loss have a sufficient "continuity of interest" in the net-operating-loss carryover after the reorganization to justify permitting the acquiring corporation to deduct the entire loss. Section 382 was meant to provide an objective, mechanical means for measuring the quantum of continuity of interest in a reorganization and determining its sufficiency. See S.Rep. No. 1622,

83d Cong., 2d Sess., *reprinted in* 1954 U.S.Code Cong. & Ad.News 4623, 4684, 4923–25.

The difficulty in applying § 382(b)(1) here is that it is drafted entirely in the singular; neither the statute nor its legislative history explicitly addresses the application of these continuity-of-interest requirements where more than one loss corporation is involved in a reorganization. However, Regulation § 1.382(b)–(1)(a)(5) interprets § 382(b) to require that each loss corporation be evaluated independently to determine whether the 20 per cent. ownership test is met for it, failing which its carryover must be reduced. In the present reorganization, none of the companies with carryovers can, when considered separately, meet the 20 per cent. test. The ownership figures for the various corporations range from two per cent. to 18 per cent. Thus, Consolidated could not claim the full amount of any of the carryovers, but under § 382(b)'s reduction formula would instead receive from 10 to 90 per cent. of the various carryovers.

However, Consolidated argued, and the District Court agreed, that Regulation § 1.382(b)–(1)(a)(5) mandates a higher degree of continuity of interest than Congress intended to require in § 382(b). The District Court observed that under this regulation, it is impossible in a valid reorganization of more than five loss corporations for the acquiring corporation to claim the full extent of all the loss corporations' carryovers, and argued that Congress could not have intended this result. The Court noted that such a result would be avoided if, instead of applying the 20 per cent. test to each loss corporation separately, the test were applied to them as a group, taking the total of their shareholders' ownership of Consolidated stock into account. The Court maintained that this aggregation approach was not inconsistent

---

1. All sections cited refer to the Internal Revenue Code of 1954, unless otherwise stated.

2. Section 383 states that the limitations contained in § 382(b) shall also govern investment-tax-credit carryovers, the other type of carry-over involved here. For the sake of convenience, our discussion will refer primarily to net-operating-loss carryovers, but our reasoning and conclusions apply equally to both kinds of carryovers.

with congressional intent. It reasoned that aggregation would meet Congress's continuity-of-interest goal because it requires that the acquiring corporation surrender a total of at least 20 per cent. of its stock and assures that those who incurred the loss retain an interest in the corporation that uses the tax benefits. The District Court concluded that Regulation § 1.382(b)–(1)(a)(5) was invalid because it distorts congressional intent, and that aggregation was the proper approach where a reorganization involves multiple loss corporations.

Here, the shareholders of the five corporations with net-operating-loss carryovers own a total of almost 39 per cent. of Consolidated's stock. The shareholders of the four corporations with investment-tax-credit carryovers received about 16 per cent. of Consolidated's stock. Hence, under the District Court's holding Consolidated would receive the full amount of the net-operating-loss carryovers and, after application of § 382(b)(2)'s reduction formula, about 79 per cent. of the investment-tax-credit carryovers.

We begin our analysis by noting that the Supreme Court has held that Treasury Regulations "'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *Commissioner v. Portland Cement Co.*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981), quoting *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948). Examining Regulation § 1.382(b)–(1)(a)(5) and relevant statutory provisions, we can find no inconsistency; there is nothing in the regulation which is unreasonable or inconsistent with either the language or the legislative history of § 382(b). Unlike the District Court, we think it entirely possible that Congress would have approved of the fact that, un-

der the regulation, where more than five loss corporations participate in a reorganization it is unavoidable that some reduction of the carryovers will be necessary. Congress might well have concluded that separate consideration of each corporation is necessary to ensure sufficient continuity of interest, even if this renders complete recovery of all carryovers impossible in some multiple-corporation mergers.[3] That an aggregation approach might also be consistent with the statute and congressional intent does not control our inquiry; rather, finding that the regulation is a reasonable interpretation of the statute, we conclude that it must be upheld.

Our decision in *World Service Life Insurance Co. v. United States*, 471 F.2d 247, 252 (8th Cir.1973), relied upon by Consolidated and the District Court, is not to the contrary. In *World Life*, we invalidated Treasury Regulation § 1.382(b)–(1)(a)(2), which provided that for purposes of the 20 per cent. ownership test stockholders of a loss corporation would not be regarded as owning any stock of the acquiring corporation not actually distributed to the shareholders. The loss corporation in *World Life* became a holding company upon reorganization; the shares of the acquiring corporation received in the reorganization were not distributed to the holding company's stockholders, but were kept by the holding company. Under Regulation § 1.382(b)–(1)(a)(2) the shareholders would not have been considered to own these shares. We found, however, that the shareholders had the same economic interest in the acquiring corporation whether or not the share were distributed, and that in fact the shareholders would be better able to pursue this interest by retaining ownership at the corporate level and presenting a single, unified voice in the acquiring corporation's affairs. We concluded that the

**3.** The Tax Reform Act of 1976, Pub.L. No. 94–455, amended § 382(b) to raise the 20 per cent. requirement to 40 per cent., effective for taxable years beginning on or after January 1, 1976. Consolidated emphasizes that this would reduce to two the number of loss corporations that could participate in a reorganization without some loss of tax benefits under Regulation

§ 1.382(b)–(1)(a)(5). However, it is not unlikely that Congress would approve such a result; indeed, the adoption of this more exacting requirement indicates increased congressional concern over continuity of interest. S.Rep. No. 938, 94th Cong., 2d Sess. 191–92 (1976), U.S. Code Cong. & Admin.News 1976, p. 2897.

regulation's distribution requirement at least erected a hurdle irrelevant to continuity of interest, and perhaps even conflicted with continuity-of-interest goals; we therefore invalidated the regulation because it manifestly contravened congressional intent. In contrast, the regulation challenged here clearly promotes continuity of interest, and we see no indication that it does so in a manner that violates congressional intent.

Consolidated also argues that even if each loss corporation must be evaluated separately, when the 20 per cent. test is applied to a corporation, all stock received by the corporation's shareholders as a result of ownership of stock in any loss corporation in this reorganization (rather than only stock received due to ownership of the particular corporation being evaluated) should be considered. This would benefit Consolidated because a number of shareholders owned stock in more than one of the corporations with carryovers. Consolidated's view does not comport with the language of § 382(b), which states that the relevant stock is that of the acquiring company which the shareholders own "as the result of owning the stock of the loss corporation"; Consolidated's theory would rewrite this phrase to read "as the result of the reorganization." Further, Consolidated's theory would greatly complicate application of § 382(b), undermining Congress's goal of establishing objective, mechanical continuity-of-interest requirements.

In sum, we hold that Treasury Regulation § 1.382(b)–(1)(a)(5) is valid, and § 382(b)'s 20 per cent. ownership test must be applied separately to each corporation with net-operating-loss or investment-tax-credit carryovers. We further hold that in applying the test to each corporation, the only relevant acquiring-corporation shares are those received as a result of owning stock in the corporation being evaluated. Accordingly, the judgment of the District Court is

Reversed.