DANIEL S. KAMPEL AND CLARISSE KAMPEL, PETITIONERS
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5198–77.    Filed August 9, 1979.

fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate
* * *

*Eugene L. Vogel,* for the petitioners.
*Joan R. Domike,* for the respondent.

OPINION

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $39,773 in petitioners' Federal income tax for 1973. The issue for decision is whether earned income, for the purposes of the 50-percent maximum tax prescribed by section 1348,[1] is a sum equal to 30 percent of the total income which petitioner Daniel S. Kampel received from a partnership in which he was a member or a sum equal to both the amount which he received as manager of the partnership's Pension Fund Department plus 30 percent of his distributive share of the partnership's income, gains, losses, and deductions.

The facts, all stipulated, may be briefly summarized.

At the time their petition was filed, petitioners Daniel S. Kampel and Clarisse Kampel, husband and wife, were legal residents of New York, N.Y. They filed their joint Federal income tax return for 1973 with the Internal Revenue Service Center, Andover, Mass.

During 1973, petitioner Daniel S. Kampel (Daniel) was a partner and the Pension Fund Department manager of L. F. Rothschild & Co. (the company), a brokerage firm operated in partnership form and engaged in a trade or business in which both personal services and capital were material income-producing factors. The company's articles of copartnership, effective January 1, 1973, provided in part for payment to the general partners of amounts characterized as "salary or compensation." In 1973, Daniel received or had credited to his account compensation for personal services rendered in his capacity as manager of

---

[1]All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

the company's Pension Fund Department. This compensation, which totaled $379,000, was determined with reference to the productivity of Daniel and of the Pension Fund Department and without regard to the income of the company.

Before petitioner became a partner in the company, he received compensation from the company as an employee for personal services rendered in managing the company's Pension Fund Department. After he became a partner, the services he rendered managing the company's Pension Fund Department were substantially similar to those rendered before he became a partner; the compensation for such services was determined in a substantially similar manner before and after he became a partner.

Daniel also received or had credited to his account a distributive share of the company's income, gains, losses, and deductions totaling $45,772.26, as well as interest payments totaling $32,095.60 on capital contributed to the company. Daniel had nonreimbursed business expenses of $10,947 in 1973.

On their 1973 joint income tax return, petitioners reported for purposes of the maximum tax on earned income, earned income and earned net income in the amount of $381,785, computed as follows:

Compensation for services rendered
in the Pension Fund Department .................. $379,000

Earned income portion of distributive
share of company's income, gains,
losses, and deductions ($45,772.26 × 30%) ....... 13,732
                                                   392,732

Less: Nonreimbursed business expense ............. 10,947
                                                   381,785

The amount of Daniel's distributive "net profits of the trade or business" for the purpose of computing "earned income" subject to the maximum tax is $456,867.86, computed as follows:

Salary, interest, and ordinary income (loss) ........... $284,176.06
Additional first-year depreciation ........................ (503.32)
Dividends qualifying for exclusion ....................... 7,704.71
Short-term capital gain ................................... 149,213.95
Long-term capital gain ................................... 10,896.20
Contributions—50-percent limitation .................... (678.93)

| | |
|---|---:|
| Political contributions | (77.08) |
| Nontaxable income | 10,452.41 |
| Interest paid to earn nontaxable income | (4,316.14) |
| | 456,867.86 |
| | |
| Nonreimbursed business expenses | (10,947.00) |
| | 445,920.86 |

Thirty percent of the excess of his share of net profits of the trade or business over allocable expenses, or $133,776, constitutes petitioners' "earned net income" under sections 1.1348–3(a)(1)(i) and 1.1348–2(d)(2), Income Tax Regs.[2]

According to petitioners, the 50-percent maximum tax rate prescribed by section 1348 applies to both Daniel's compensation for services to the Pension Fund Department, and 30 percent of Daniel's distributive share of the partnership's net profits. Because the compensation payments are "guaranteed payments" within the meaning of section 707(c), petitioners argue that they are to be treated in the same manner as if the payments had been made to one who was not a partner. Respondent maintains that guaranteed payments are, for the purpose of section 1348, part of a partner's distributive share of ordinary income and thus part of the share of net profits to which the 30-percent limitation applies.[3]

Section 1348[4] permits an individual to compute the tax on

---

[2]In the notice of deficiency, the Commissioner determined that total 1973 income from the company is $284,176 and applied the maximum tax to 30 percent of this amount, or $85,253. Respondent concedes that this determination is incorrect.

[3]Alternatively, respondent challenges petitioner's position that the compensation he received as Pension Fund Department manager constitutes a guaranteed payment within the meaning of sec. 707(c). We find it unnecessary to reach this argument. For if the management compensation is not a guaranteed payment, all amounts received from the partnership are part of petitioner's distributive share of partnership income and thus subject to the 30-percent limitation. If it is a guaranteed payment, sec. 1348, as we read it, compels a holding for respondent. Thus, the result is unchanged whether or not the compensation qualifies as a guaranteed payment.

[4]Sec. 1348(a) and (b)(1) is as follows:

SEC. 1348. FIFTY-PERCENT MAXIMUM RATE ON EARNED INCOME.

(a) GENERAL RULE.—If for any taxable year an individual has earned taxable income which exceeds the amount of taxable income specified in paragraph (1), the tax imposed by section 1 for such year shall, unless the taxpayer chooses the benefits of part I (relating to income averaging), be the sum of—

    (1) the tax imposed by section 1 on the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent,

    (2) 50 percent of the amount by which his earned taxable income exceeds the lowest amount of taxable income on which the rate of tax under section 1 exceeds 50 percent, and

    (3) the excess of the tax computed under section 1 without regard to this section over the tax so computed with reference solely to his earned taxable income.

      *        *        *        *        *        *        *

earned taxable income by using a maximum tax rate of 50 percent. The definition of "earned income" set out in section 911(b) is incorporated by reference. Sec. 1348(b)(1). "In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors," section 911(b) limits the amount considered earned income as follows:

under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income.[5]

See also sec. 1.911–2(c), Income Tax Regs.

Section 1.1348–3(a)(3)(i), Income Tax Regs., prescribes the treatment of "guaranteed payments" received from a partnership engaged in a business in which both personal services and capital are material income-producing factors as follows:

a reasonable allowance as compensation for the personal services actually rendered by the individual shall be considered earned income, but *the total amount which shall be treated as the earned income of the individual from such a trade or business shall in no case exceed 30 percent of his share of the net profits of such trade or business (which share shall include any guaranteed payment (as defined by section 1.707–1(c)) received from a partnership).* * * * [Emphasis added.]

By its express terms, the final parenthetical clause of this regulation includes in the partner's share of net profits "any guaranteed payment," as defined in section 1.707–1(c), Income Tax Regs. For a member in a partnership in which both personal services and capital are material income-producing factors, the regulation provides that "in no case" shall "the total amount which shall be treated as the earned income" of the partner exceed 30 percent of his share of the net profits of such trade or business. We accept petitioners' contention that the distributions at issue are guaranteed payments; these payments were received from the company, a partnership in which services and

---

(b) DEFINITIONS.—For purposes of this section—

(1) EARNED INCOME.—The term "earned income" means any income which is earned income within the meaning of * * * section 911(b) * * *

[5]Pub. L. 95–600, 95 Stat. 2779, included in sec. 1348(b)(1)(A) the following sentence: "For purposes of this subparagraph, section 911(b) shall be applied without regard to the phrase, 'not in excess of 30 percent of his share of net profits of such trade or business.' " Due to this amendment, the issue presented in this case will arise only in taxable years beginning on or before Dec. 31, 1978, the effective date of the amendment.

capital are income-producing factors. Hence, we conclude that, under section 1.1348–3(a)(3)(i), Income Tax Regs., Daniel's earned income from the partnership for the purposes of the maximum tax is limited to 30 percent of the partnership payments made to him.

Maintaining that section 1.1348–3(a)(3)(i), Income Tax Regs., is ambiguous, petitioners argue that it may be construed to treat a guaranteed payment in its entirety as earned income subject to the maximum tax but to exclude any additional allowance of earned income. We do not agree. The regulation plainly states that the "total amount" which shall be treated as earned income "shall in no case exceed 30 percent of his share of the net profits" of the trade or business and adds that such "share shall include any guaranteed payment * * * received from a partnership." If the limitation indicated that the total amount to be treated as earned income was not to exceed the amount of a guaranteed payment, such a reading would be tenable. The amount subject to section 1348 is, however, limited instead by a stated percentage of the partner's share of net profits; guaranteed payments are mentioned only to be included in the share upon which the percentage limitation is computed.

Petitioners argue, alternatively, that section 1.1348–3(a)(3)(i), Income Tax Regs., is invalid. When ruling on the validity of a regulation, we bear in mind that the Court has no power to revise the regulations. Rather our function "begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *United States v. Correll*, 389 U.S. 299, 307 (1967); *Commissioner v. Stidger*, 386 U.S. 287, 296 (1967). Accordingly, unless it is "unreasonable and plainly inconsistent with the revenue statutes," a regulation must be sustained. *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948); accord, *Topps of Canada, Ltd. v. Commissioner*, 36 T.C. 326, 336–337 (1961).

We think the regulation embodies a reasonable interpretation of section 1348. According to the section 911(b) definition of earned income, incorporated by reference in section 1348, a partner in a business in which both personal services and capital are material income-producing factors may treat as earned income an amount representing compensation for services but only to the extent of 30 percent of his share of net profits.

Sections 911(b) and 1348 contain nothing from which one could infer that the maximum tax rate may be applied to guaranteed payments in addition to, or instead of, the amount determined by section 911(b). Furthermore, section 707(c) specifically treats guaranteed payments other than as part of a partner's distributive share "only for the purposes of section 61(a) (relating to gross income) and 162(a) (relating to trade or business expenses)." Section 1.707–1(c), Income Tax Regs.,[6] expressly provides that: "For the purposes of other provisions of the internal revenue laws, guaranteed payments are regarded as a partner's distributive share of ordinary income." Section 1348 does not affect the determination of the amount of either gross income under section 61(a) or trade or business expenses under section 162(a). Rather, if its conditions are satisfied, it merely modifies the rate imposed on taxable income by section 1. Accordingly, for the purposes of section 1348, guaranteed payments are treated as part of the distributive share of partnership income.

To strengthen their argument that the regulation is invalid, petitioners point to the section 707(c)[7] statement that guaranteed payments "shall be considered as made to one who is not a member of the partnership." As the legislative history indicates, the purpose behind section 707 was to provide that "payment of a fixed or guaranteed amount for services shall be treated as salary income to the recipient and allowed as a business

---

[6]Sec. 1.707–1(c), Income Tax Regs., is as follows:

(c) *Guaranteed Payments.* Payments made by a partnership to a partner for services or for the use of capital are considered as made to a person who is not a partner, to the extent such payments are determined without regard to the income of the partnership. However, a partner must include such payments as ordinary income for his taxable year within or with which ends the partnership taxable year in which the partnership deducted such payments as paid or accrued under its method of accounting. See section 706(a) and paragraph (a) of section 1.706–1. Guaranteed payments are considered as made to one who is not a member of the partnership, only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses). They do not constitute an interest in partnership profits for purposes of sections 706(b)(3), 707(b), and 708(b). *For the purposes of other provisions of the internal revenue laws, guaranteed payments are regarded as a partner's distributive share of ordinary income.* Thus, a partner who receives guaranteed payments for a period during which he is absent from work because of personal injuries or sickness is not entitled to exclude such payments from his gross income under section 105(d). Similarly, a partner who receives guaranteed payments is not regarded as an employee of the partnership for the purposes of withholding of tax at source, deferred compensation plans, etc. * * * [Emphasis added.]

[7]SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP.

(c) GUARANTEED PAYMENTS.—To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for the purposes of section 61(a) (relating to gross income) and section 162(a) (relating to trade or business expenses).

deduction to the partnership." H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 68 (1954). In the technical explanation of the provision, the House Report accompanying the enactment of section 707 states that a partner who receives a fixed payment for services rendered to a partnership "shall be treated to the extent of such amount like any other employee who is not a partner" and, further, that the amount of such payment "shall be included in the partner's gross income, and shall not be considered a distributive share of partnership income or gain." H. Rept. 1337, *supra* at A227.

Yet, as the committee reports discuss, one purpose for treatment of salary-type payments to partners not as part of the distributive share was to eliminate accounting complexities existing under prior law. Before enactment of the 1954 Code, salary-type payments were considered to be part of the distributive share of partnership income. When such payments exceeded partnership income, they were nontaxable to the extent that they represented a return of the recipient's capital. To the extent that they exceeded his basis, they were attributed to the capital accounts of other partners, taxable to the recipient and deductible by the partners to whose accounts the payments were charged. H. Rept. 1337, *supra* at 68. According to several commentators, the elimination of this complex and unrealistic approach was the reason for enactment of section 707(c). E.g., W. McKee, W. Nelson & R. Whitmire, Federal Taxation of Partnerships and Partners, par. 13.03[1] (1977). To accomplish this aim, it is unnecessary that guaranteed payments be treated other than as part of the distributive share except for the purpose of reporting income by the recipient and of deducting expense by the partnership as the "but only" phrase provides.[8]

Moreover, petitioners' argument fails to take into account

---

[8]The following excerpt from the Senate committee report supports this view (S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591) 83d Cong., 2d Sess. 94 (1954)):

"In the case of guaranteed salary payments your committee followed the House bill but made it clear that such income is to be reported for tax purposes at the end of the partnership year in which it is paid and that *this treatment is only provided for purposes of the reporting of the income by the partner and the deducting of the payments by the partnership. Your committee also extended this treatment to guaranteed interest payments on capital.* [Emphasis added.]"

The reference to "this treatment," as we interpret it in the context of this case, means "treatment other than as part of a distributive share." Such an interpretation strengthens the theory that, as the "but only" phrase and sec. 1.707-1(c), Income Tax Regs., indicate, guaranteed payments are to be treated as part of the distributive share for the purposes of Code sections other than secs. 61(a) and 162(a).

Conf. Rept. 2543, 83d Cong., 2d Sess. 59, which makes the following comment with respect to section 707:

> Both the House provisions and the Senate amendment provide for the use of the "entity" approach in the treatment of the transactions between a partner and a partnership which are described above. No inference is intended, however, that a partnership is to be considered as a separate entity for the purpose of applying other provisions of the internal revenue laws if the concept of the partnership as a collection of individuals is more appropriate for such provisions. An illustration of such a provision is section 543(a)(6), which treats income from the rental of property to shareholders as personal holding company income under certain conditions.

We think the concept of a partnership as a collection of individuals is appropriate for the application of section 1348(b)(1). Moreover, this conclusion is consonant with the interpretation of the section 707(c) "but only" language set forth in section 1.707–1(c), Income Tax Regs., and, as we have discussed, with the legislative goal of eliminating a complex and unrealistic accounting method for partnership law. Furthermore, section 707(c) is relevant to our decision only as it relates to section 1348, the Code section under which the issue arises. The latter section expressly incorporates the net-profits-from-the-business concept set out in section 911(b). Given the foregoing standard for the review of the validity of regulations, the statutory language, and the legislative history of section 707, we cannot say that the disputed regulation is invalid.

To further support their contention that the regulation is invalid, petitioners rely upon *Carey v. United States*, 192 Ct. Cl. 536, 427 F.2d 763 (1970), and *Miller v. Commissioner*, 52 T.C. 752 (1969), cases which involve, respectively, a partner in an accounting firm who resided in Japan and a member of a law partnership who resided in France. Each of these taxpayers received annually a fixed sum plus a share of his firm's profits. Those cases presented the issue whether the partner was entitled under section 911 to exclude from his gross income as earned income the fixed annual distribution which he received along with his share of the partnership's profits. Rejecting the Commissioner's contention that both types of payments should be treated alike and excluded only to the extent which they represented the taxpayer's share of the firm's income from sources outside the United States, the *Miller* and *Carey* courts held that the fixed sum received by the partner was earned income subject to exclusion under section 911.

Because they involve not section 1348 but rather the section 911 exclusion from gross income for bona fide residents of foreign countries, the *Miller* and *Carey* cases are distinguishable from the instant one. The courts in both cases relied in part on the legislative purpose behind section 911, easing the tax burdens of Americans working abroad. *Carey v. United States, supra* at 767; *Miller v. Commissioner, supra* at 761. Moreover, in *Miller* the Court expressly noted that the case did not involve a business in which both personal services and capital are material income-producing factors; this was apparently also true in *Carey.* The section 911(b) 30-percent limitation on earned income did not, therefore, apply. Indeed, *Miller v. Commissioner, supra* at 761, explicitly limited its holding to the context of section 911.

It is true that both the *Carey* and *Miller* courts held that the section 707(c) phrase "but only for the purposes of section 61(a) * * * and section 162(a)" did not preclude treatment of section 707(a) payments as compensation for the purposes of section 911. According to the *Carey* opinion, the reference to sections 61, including as it does that section's phrase "except as otherwise provided in this subtitle," covers exclusions from income provided by other subtitle A sections such as section 911(a). *Carey v. United States, supra* at 766–767. See *Miller v. Commissioner, supra* at 761. But section 1348 does not, like section 911, exclude from gross income amounts otherwise includable under section 61. Rather, as explained above, it merely alters the tax rate prescribed by section 1. Therefore, the section 61 phrase "except as otherwise provided in this subtitle" cannot be read as applying to section 1348.[9]

In support of their argument that the reasoning of *Miller* and *Carey* applies to section 1348, petitioners draw our attention to the 1976 amendment which conformed the language of section 707(c) to the holding in *Cagle v. Commissioner,* 63 T.C. 86 (1974), affd. 539 F.2d 409 (5th Cir. 1976).[10] Observing that Congress

---

[9]In *Armstrong v. Phinney,* 394 F.2d 661, 664 n. 10 (5th Cir. 1968), the phrase "but only for the purposes of section 61(a) * * * and section 162(a)" was construed as in *Carey v. United States,* 192 Ct. Cl. 536, 427 F.2d 763 (1970), and *Miller v. Commissioner,* 52 T.C. 752 (1969). Reading the sec. 119 exclusion into the reference to sec. 61(a), the Fifth Circuit stated in dictum that a partner may exclude under sec. 119 the value of meals and lodging received as a guaranteed payment. The opinion in *Armstrong v. Phinney* has received criticism from commentators who have suggested that it not be relied on as authority for treating a partner as an employee for the purposes of other Code sections. E.g., A. Willis, Partnership Taxation, sec. 16.02 (1971). This Court in *Miller v. Commissioner, supra* at 763, expressly noted that its holding was not based on *Armstrong v. Phinney.*

[10]In *Cagle v. Commissioner,* 63 T.C. 86 (1974), affd. 539 F.2d 409 (5th Cir. 1976), the taxpayer argued

made no amendment to disapprove of the result in *Miller* and *Carey*, petitioners conclude that the Congress tacitly approved of those cases. This argument does not withstand logical analysis. Congress indicated approval of *Cagle* by amending the statute. It took no action to indicate either approval or disapproval of *Miller* and *Carey* We are thus unable to agree with petitioners that the legislature has manifested any opinion of these cases.

Finally, petitioners argue that the result we reach violates horizontal equity by affording to a partner who receives a guaranteed payment less favorable tax treatment than that accorded a salaried employee performing similar services for the partnership. In many cases, however, the guaranteed payment will be no less subject to section 1348 than is the salary. Assuming other section 1348 requirements are met, a guaranteed payment is subject in its entirety to maximum tax treatment unless it exceeds 30 percent of the sum of the distributive share and the guaranteed payment. Petitioners have cited nothing in the legislative history which would indicate that Congress intended to allow amounts in excess of the 30-percent limitation to enjoy maximum tax treatment. The committee reports fail to discuss this point but affirm that the 30-percent limitation applies to business in which both personal services and capital are material income-producing factors. General Explanation of the Tax Reform Act of 1969 (H.R. 13270 (Pub. L. 91–172), 91st Cong., 1st Sess. 226); H. Rept. 91–413 (Part 1) (1969), 1969-3 C.B. 200, 331). Hence, our holding in no way contravenes the legislative purpose of section 1348.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

that the sec. 707(c) words "but only for the purposes of * * * section 162(a)" indicate that guaranteed payments are automatically deductible by the partnership. The Court held that deductibility is subject to usual standards, including that of not being described in sec. 263. To affirm the *Cagle* holding, Congress inserted the words "subject to section 263" in the statute. General Explanation of the Tax Reform Act of 1976 (H.R. 10612, 94th Cong., 2d Sess.), 1976-3 C.B. (Vol. 2) 101–102.