WILLIAM P. ZAHLER AND ROWENA L. ZAHLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Zahler v. Commissioner
Docket No. 2638-78.
United States Tax Court
T.C. Memo 1981-112; 1981 Tax Ct. Memo LEXIS 631; 41 T.C.M. (CCH) 1074; T.C.M. (RIA) 81112; March 10, 1981. *631 Petitioner-husband was a general partner in, and Commission salesman for, a securities brokerage, investment, and financial services firm. His income from the firm consisted of (1) commission income based on his sales; (2) interest on his capital contribution to the firm; and (3) his share of the firm's "net profits" or loss, determined after deducting the firm's payments of commissions to petitioner-husband and its other salespeople. Capital was a material income-producing factor for the firm. Held: The 30-percent limit of section 911(b), I.R.C. 1954, applies to petitioner-husband's commission income in determining his "earned income" for purposes of the limitation on tax ("maxitax") provided by section 1348 (pre-1979). Loyal E. Luikart, Jr., for the petitioners. Barbara B. McCaskill, for the respondent. CHABOT
MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners for 1972 and 1973 in the amounts of $ 11,627.99 and $ 1,124.53, respectively. After concession by petitioners of one issue, the issue for decision is whether commissions received by petitioner William P. Zahler from a partnership with respect to which capital was a material income-producing factor and in which he was a general partner are subject to the 30-percent limit in the definition of earned income for purposes of the limitation on tax ("maxitax") provided by section 1348. [1]
FINDINGS OF FACT Some of the facts have been *632 stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition in this case was filed, petitioners William P. Zahler (hereinafter sometimes referred to as "Zahler") and Rowena L. Zahler, husband and wife, resided in Mayfield Heights, Ohio. For 1972 and the first six months of 1973, Zahler was a general partner in, and commission salesman for, the firm of Ball, Burge, & Kraus (hereinafter referred to as "BB&K"). BB&K was a partnership organized to engage in the business of general brokerage, investment securities, investment banking, and financial services, and in the purchase of, sale of, and transactions in, stock, bonds, options, other securities, insurance, and commodities. Capital was a material income-producing factor in BB&K's trade or business. Zahler began in the investment business in 1945 with C. F. Childs and Company, a government bond house. In January 1953, he joined the firm of W. K. Kurtz and Company. In July 1955, he joined BB&K, to start this firm's government bond department. In January 1963, he became a general partner in BB&K. From 1945 until his retirement in 1976, Zahler was involved in the selling *633 of securities as a commission salesman, specializing in United States Government securities. During 1972 and 1973, Zahler's over-the-counter sales consisted primarily of United States Treasury notes, bills, and bonds, and of securities of the Federal National Mortgage Association, the Central Bank for Cooperatives, the Federal Intermediate Credit Bank, the Federal Land Bank, the Federal Home Loan Bank, and the Federal Housing Authority. He also sold municipal bonds and a small amount of securities listed on the New York Stock Exchange. When BB&K acted as broker, Zahler's work as salesman produced commission income for BB&K. A portion of the commission income Zahler thus generated was credited to Zahler's account; the remainder stayed with BB&K. When BB&K acted as dealer or underwriter, Zahler and other salespeople were credited with commissions whether the sales produced gains or losses for BB&K. At the end of each three-month period, the monthly commissions credited to Zahler's account were averaged, and paid to him in equal amounts during the next three months. Zahler's status as a partner in BB&K did not affect the amount of his commission income, except insofar as *634 it affected the timing of his receipts. [2]
The partners in BB&K divided BB&K's "net profits" in direct proportion to the partners' numbers of units of participation. Zahler had five units of participation in BB&K out of a total of 91 units of participation. In determining BB&K's net profits to be so divided, the firm treated as expenses its payments of salary to any administrative partner and its payments of commission to any commission-income-producing partner, such as Zahler. For 1972 and the first six months of 1973, Zahler received $ 137,186 and $ 77,037.25, respectively in net commissions for sales made to his customers. For 1972, Zahler received $ 50,391.25 as his share of net profits from BB&K and $ 1,625.99 in interest on his capital contribution. BB&K was in a loss position in 1973 and Zahler contributed $ 24,768.77 to the firm as general partner in 1973 as his share of the partnership loss. On July 1, 1973, BB&K merged into the firm of Prescott, Merrill, & Turben to form *635 the firm of Prescott, Ball, & Turben (hereinafter referred to as "PB&T"). For the remainder of 1973, Zahler was a special partner in, and commission salesman for, PB&T. As a special partner, Zahler was an employee of PB&T and was not treated as a partner for the purposes of the Ohio limited partnership law or any other State or Federal law. On their 1973 Federal income tax return, petitioners reported $ 40,216.42 as Zahler's wages from PB&T and $ 10,268 as partnership income from PB&T. The parties have treated both of these amounts in full as "earned income" for purposes of section 1348. Petitioners reported on their Federal income tax returns (see note 3, infra), and respondent determined, the amounts of "earned income" shown in table 1. Table 1 Petitioners
Respondent
1972
Income from BB&K
--commissions
$ 137,186.00
$ 137,186.00
--share of net profits
$ 50,391.25 x.30
[3] 15,117.38
50,391.25
--interest on capital
contribution
[3] 1,625.99
1,625.99
$ 189,203.24 x.30
$ 56,760.97
$ 153,929.37
$ 56,760.97
1973
Income from BB&K
[4] $ 53,332.78
[4] $ 53,332.78 x.30
$ 15,999.83
Wages from PB&T
40,216.42
40,216.42
Other income from PB&T
10,268.00
10,268.00
$ 103,817.20
$ 66,484.25
*636 Zahler was engaged in only one trade or business in his dealings with or for BB&K; his commission income was compensation for his personal services rendered in this trade or business. OPINION The parties' basic dispute is as to the proper treatment of Zahler's commission income from BB&K. Respondent *637 argues that the commissions are guaranteed payments, which are to be taken into account together with Zahler's other income from BB&K for purposes of the 30-percent limit [5] imposed by the last sentence of section 911(b), thereby reducing the amount eligible for the limitation on tax provided by section 1348. Petitioners argue that the commissions are separate "compensation for the personal services actually rendered" by Zahler and are not part of Zahler's share of BB&K's net profits. As a result, petitioners argue, all of Zahler's commission income from BB&K is part of petitioners' earned income [6] and is eligible for the limitation on tax provided by section 1348. *638 We agree with respondent's conclusion. Section 1348, enacted by section 804(a) of the Tax Reform Act of 1969 (Pub. L. 91-172, 83 Stat. 685), provides that the marginal tax rate applicable to an individual's earned income is not to exceed 50 percent. "Earned income" is defined in section 1348(b)(1) as "any income which is earned income within the meaning of * * * section 911(b) * * *." [7] The last sentence of section 911(b)[8] provides a rule for income derived from a trade or business of the taxpayer. *639 Under the statute, if capital is a material income-producing factor in the taxpayer's trade or business, then not more than 30 percent of the taxpayer's share of the net profits of "such trade or business" is to be considered as earned income for purposes of section 911(b). On the basis of the record in the instant case we have found as ultimate facts that Zahler was engaged in only one trade or business in his dealings with or for BB&K and that his commission income was compensation for his personal services rendered in this trade or business. Traditionally, general partners have been viewed as being engaged in their partnerships' trades or businesses. E.g., Butler v. Commissioner, 36 T.C. 1097, 1106 (1961). See Goodwin v. Commissioner, 75 T.C.    , slip opin. at 23 (Dec. 29, 1980). The record does not support a conclusion that Zahler's commission sales activities constituted a trade or business separate from BB&K's trade or business. It follows from the foregoing that Zahler's commission income was compensation for his personal services rendered in BB&K's trade or business. Since we have found that capital was a material income-producing factor *640 in BB&K's trade or business, it follows that Zahler's commission income was compensation from a trade or business in which capital was a material income-producing factor. From the foregoing, we conclude that Zahler's commission income is to be taken into account under the last sentence of section 911(b). Petitioners maintain that Zahler's commission income is to be treated under section 707(a) [9] as income from a transaction that Zahler engaged in with BB&K other than in his capacity as a partner in BB&K. It is plain that Zahler was not acting outside the scope of his role as a partner when he was engaged in commission selling. Indeed the record does not disclose any other partnership function that Zahler fulfilled or was supposed to fulfill. [10] Zahler's commission sales activity was within the scope of the partnership's business activities. The facts that (1) employees also apparently did commission selling for BB&K and (2) Zahler's commission income was subtracted in arriving at "net profits" for purposes of computing each partner's income from BB&K, do not alter the basic situation. Pratt v. Commissioner, 550 F.2d 1023, 1026-1027 (CA5 1977), affg. on this *641 point (and revg. on another point) 64 T.C. 203, 211-212 (1975). We conclude that Zahler's commission income is not within the scope of section 707(a). Petitioners cite the following cases in support of their section 707(a) argument: Wegener v. Commissioner, 119 F.2d 49 (CA5 1941), affg. 41 B.T.A. 857 (1940); Sverdrup v. Commissioner, 14 T.C. 859 (1950); Armstrong v. Phinney, 394 F.2d 661 (CA5 1968). In Pratt v. Commissioner, 550 F.2d at 1026, the Court of Appeals for the Fifth Circuit dismissed Wegener as authority for interpreting section 707(a) by noting that Wegener was a presubchapter K decision. *642 In addition, in Wegener, both the Circuit Court of Appeals (119 F.2d at 51) and the Board (41 B.T.A. at 862-863) concluded that the joint venture involved therein did not extend to the particular work for which the joint venture paid Wegener, and that Wegener's work was separate from his role as a joint venturer. In the instant case, Zahler's commission selling was not separate from his partnership activitiy--it was his partnership activity. Sverdrup, too, is a presubchapter K decision. In Sverdrup, Parcel, Grant, and Sverdrup formed an engineering partnership. In connection with the performance of certain contracts with the United States Government, the partnership formed a joint venture with Turnbull. Sverdrup's distributive share ($ 36,279.30) of the partnership's distributive share of the joint venture's profit on the contracts was held to have been "paid by the United States", within the meaning of this term as used in the predecessor of section 911(a). However, an additional $ 5,000 paid to Sverdrup directly by the joint venture for separate services to the joint venture was held not to have been so "paid by the United States". In *643 the instant case, all the amounts in issue came to Zahler from BB&K, and we see no basis for bifurcation based on source. In Armstrong v. Phinney, supra, the Court of Appeals interpreted section 707(a) as conceivably permitting a partner to be treated as an employee for purposes of applying section 119 (excluding from income the value of meals and lodging furnished to employees under certain circumstances). The Court of Appeals then remanded the case (which had come to it on appeal from the granting of a motion for summary judgment) for further proceedings, including an inquiry into whether the partner was indeed also an employee of the partnership and, if so, whether the other requirements of section 119 had been met. In the instant case we have concluded, on the basis of the record before us, that Zahler was not acting outside the scope of his capacity as a BB&K partner when he performed his commission sales work. See Kampel v. Commissioner, 634 F.2d 708, 714 (CA2 1980), affg. 72 T.C. 827, 836, n. 9 (1979). Petitioners point out that Zahler's commission income from BB&K for the years before the Court was earned in the *644 same way as he had earned such income in earlier years as an employee of BB&K. Petitioners argue that if Zahler had not been a partner of BB&K during 1972 and 1973, then the 30-percent limit of section 911(b) would not have applied to him and his entire commission income would have been "earned income" for purposes of section 1348. In the Revenue Act of 1978 (Pub. L. 95-600) the Congress eliminated the 30-percent limit, for purposes of section 1348 (sec. 442(a) of the Act, 92 Stat. 2878). The Congress did so because of its recognition that partners and sole proprietors were being subjected to greater Federal income tax burdens than the burdens imposed on those who choose to operate substantially identical businesses in corporate form. The Congress was concerned that this disparity in tax treatment might tend to influence individuals to use a corporate business form for reasons attributable only to potential tax savings, and sought by the 1978 Act amendment to head off any such trend. S. Rept. 95-1263, p. 208, 1978-3 (Vol. 1) C.B. 315, 506; H. Rept. (Conference Rept.) 95-1800, p. 269, 1978-3 (Vol. 1) C.B. 521, 603. See General Explanation of the Revenue Act of 1978, Staff of *645 the Joint Committee on Taxation, p. 274. However, this tax benefit was provided by the 1978 Act only for taxable years beginning after December 31, 1978. (Sec. 442(b) of the Act, 92 Stat. 2878.) Since petitioners' taxable years before us are 1972 and 1973, they are not eligible for application of the 1978 Act relief provision to the instant case and we have no authority to grant relief where the Congress has withheld it. Viewing petitioners' argument as a plea for horizontal equity focussing on employees of partnerships (rather than, as the Congress did, focussing on choice of business form), we conclude that the statute does not provide the rule petitioners seek. See our comments in Kampel v. Commissioner, 72 T.C. at 837, affd. 634 F.2d at 715. But see Carey v. United States, 192 Ct. Cl. 536, 427 F.2d 763, 767 (1970). Petitioners have conceded that Zahler's 1972 share of net profits also is to be taken into account under the last sentence of section 911(b). Petitioners have not presented us with any explanation as to why Zahler's 1972 interest on capital contribution should be treated as earned income in its entirety. We *646 conclude that, in accordance with the notice of deficiency (see Kampel v. Commissioner, 634 F.2d at 716, n. 15), this interest item is to be taken into account under the last sentence of section 911(b). It follows, then, that the 30-percent limit of section 911(b) applies to all of Zahler's income from BB&K for the years before the Court. Under section 1348(b)(1) as applied to the record in the instant case, only the amount that survives this section 911(b) earned income test is eligible for the limitation on tax provided by section 1348. The result we reach by applying sections 1348(b)(1) and 911(b), and by concluding that section 707(a) does not apply, is the same result respondent seeks. It is unnecessary to determine whether we should also reach that result by respondent's route, viz., by treating Zahler's commission income as guaranteed payments to him by BB&K under section 707(c); sections 1.707-1(c) and 1.1348-3(a)(3)(i), Income Tax Regs.; Kampel v. Commissioner, supra. Furthermore, since we conclude on the record before us that section 707(a) does not apply to Zahler's commission income, we see no need to explore in this opinion what would *647 follow if we had ruled that section 707(a) does apply. Finally, we note that this opinion should not be construed as holding that section 707(a) can never apply to a partner performing services in relation to the business of a service partnership. To take account of the apparent discrepancies discussed at note 4, supra, Decision will be entered under Rule 155. Footnotes
1. Unless indicated otherwise, all section references are to sections of the Internal Revenue Code of 1954 as in effect for the taxable years in issue.↩
2. Partners' commission income payments were subjected to the above-described three-month averaging, while nonpartner commission salespeople were paid their earned commissions each month.↩
3. On their Federal income tax return for 1972, petitioners treated the entire $ 50,391.25 share of net profits and the entire $ 1,625.99 interest on capital contribution as earned income, which (with Zahler's commission income) made a total of $ 189,203.24 earned income. On brief, petitioners concede that only 30 percent of the share of net profits should be treated as earned income; no such concession is made as to the interest. ↩
4. The parties have stipulated that Zahler received $ 77,037.25 in net commissions from BB&K in 1973 and that he contributed $ 24,768.77 as his share of BB&K's net loss for that year, netting to $ 52,268.48. The parties do not explain the difference between that net and the $ 53,332.78 amount set forth on petitioners' 1973 Federal income tax return and on the notice of deficiency. These amounts are to be reconciled in the computations under Rule 155.↩
5. The statute sets a 30-percent maximum, but no minimum. See 2A. Willis, Partnership Taxation (2d ed. 1976), sec. 71.04, p. 288. We interpret respondent's calculations as an implicit concession that, if the commissions are subject to the 30-percent limit, then the full 30 percent is to be treated as earned income. In view of our determination as to the basic issue, we do not determine whether less than 30 percent of the 1972 share of net profits or interest on capital contributions would be earned income if the commissions were exempted from the 30-percent limit. ↩
6. Respondent's only determination with respect to Zahler's commission income is that it falls under the 30-percent limit. Under the circumstances, we assume for purposes of the instant case that there is no other impediment to treating the full amount of the commissions as earned income. See section 1.1348-3(a)(1)(i)(A), Income Tax Regs.↩
7. Subsequent amendments of this provision (changing "earned income" to "personal service income", revising the definition, and removing the 30-percent limit for 1979 and thereafter), by section 302(a) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1554, and by sections 442(a) and 701(x)(1) of the Revenue Act of 1978, Pub. L. 95-600, 92 Stat. 2878, 2920, do not affect the instant case. ↩
8. Section 911(b) provides as follows: SEC. 911. EARNED INCOME FROM SOURCES WITHOUT THE UNITED STATES. (b) Definition of Earned Income.--For purposes of this section, the term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered. In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary or his delegate, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income. [Subsequent amendments of the section heading (by sec. 202(f)(1) of the Foreign Earned Income Act of 1978, Pub. L. 95-615, 92 Stat. 3098) and of subsection (b) (by sec. 1906(b)(13)[sic](A) of the Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1834) do not affect the instant case.]↩
9. SEC. 707. TRANSACTIONS BETWEEN PARTNER AND PARTNERSHIP. (a) Partner Not Acting in Capacity as Partner.--If a partner engages in a transaction with a partnership other than in his capacity as a member of such partnership, the transaction shall, except as otherwise provided in this section, be considered as occurring between the partnership and one who is not a partner. ↩
10. The parties have not provided us with the text of any part of the partnership agreement.↩