Glenn L. Archer, Jr., Tax Div., Dept. of Justice, Michael L. Paup, Roger M. Olsen, Jonathan S. Cohen, John A. Dudeck, Washington, D.C., for defendant-appellant.

Lawrence A. Farese, Cummings & Lockwood, Naples, Fla., George G. Vest, Cummings & Lockwood, Stamford, Conn., for plaintiffs-appellees.

**J.N. LEDBETTER and R.W. Ledbetter, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 85–5933.

United States Court of Appeals, Eleventh Circuit.

Corrected.

June 27, 1986.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This appeal tests the validity of an Internal Revenue Service regulation which, for the tax years 1973, 1974, and 1975, limited

the amount of income received by taxpayer from his partnership that could be treated as "earned income." As stated by the Court of Appeals for the Second Circuit in an identical case:

> This appeal involves the narrow question whether guaranteed partnership income, viewed as salary by Internal Revenue Code § 707(c), is subject to the limits on taxation of earned income imposed by Code Section 1348 [and Treas.Reg. 1.1348–3(a)(3)(i) ] for taxpayers prior to 1978.[1] *Kampel v. Commissioner,* 72 T.C. 827 (1979)....
>
> [1] The Revenue Act of 1978, Pub.L. No. 95–600, 92 Stat. 2763, amended § 1348 with the effect of resolving in part the problem raised in this appeal for tax years beginning after the effective date of the amendment, December 31, 1978, by eliminating operation of the 30% earned income allocation rule of § 911(b) for § 1348 purposes. Section 442, *id;* 92 Stat. at 2878.

*Kampel v. C.I.R.,* 634 F.2d 708 (2nd Cir. 1980).

## I. FACTS

The pertinent facts were stipulated and may be summarized as follows.

During the years at issue, J.N. Ledbetter[1] was a general partner in a number of partnerships engaged in the business of owning and leasing commercial aircraft. In each of the partnerships, capital was a material income producing factor.

As a general partner, taxpayer was entitled to receive his distributive share of the partnership's profits and losses. In addition, each of the partnership agreements provide for the payment of certain management fees to the general partners based on a percentage of the original cost of the property to the partnership. These management fees were payable, and were paid, without regard to the profits or losses of the partnerships.

On his federal income tax returns for 1973, 1974, and 1975, taxpayer treated the entire amount of the fees paid to him by the partnerships as "earned income" eligi-

**1.** J.N. Ledbetter is referred to herein as the taxpayer. R.W. Ledbetter, his wife, is a party

ble for the 50% maximum tax rate provided by Section 1348 of the Internal Revenue Code, 26 U.S.C. § 1348. The Commissioner of Internal Revenue determined that taxpayer had failed to compute his "earned income" in accordance with the formula provided in Section 1.1348–3(a)(3)(i) of the Treasury Regulations on Income Tax, 26 C.F.R. (1954 Code). That Regulation provides that if both personal services and capital are material income-producing factors, not more than 30% of the net profits a taxpayer receives from his business (including guaranteed payments within the meaning of Section 707(c) of the Internal Revenue Code of 1954) can be considered as "earned income" for the purposes of the maximum tax provisions of Section 1348. The Commissioner thus treated only 30% of the management fees as earned income, and determined an additional tax deficiency against the taxpayer. The taxpayer paid the deficiency and after timely claims for refund he then filed this suit for refund in the district court.

Upon motion by the appellee, the district court entered summary judgment in his favor, finding that the regulation was "unreasonable and inconsistent with the statutory scheme," because it was inconsistent with Section 707(c) which allows such guaranteed payments to a partner to be deducted from gross income in determining the net profits of the partnership.

## II. DISCUSSION

This appeal brings into play three Sections of the Internal Revenue Code, 26 U.S.C. § 707(c), § 1348 and § 911(b). Because of the interplay between these Sections, we quote the relevant parts of each of them in full in the course of this discussion.

With no antecedent history, the Internal Revenue Code of 1954 incorporated Section 707(c) which provides as follows:

Guaranteed payments—

hereto solely by virtue of having filed a joint return with her husband for the years in issue.

To the extent determined without regard to the income of the partnership, payments to a partner for services or the use of capital shall be considered as made to one who is not a member of the partnership, but only for purposes of Section 61(a) (relating to gross income) and Section 162(a) (relating to trade or business expenses), 26 U.S.C. § 707(c).

The parties are in agreement that the limitations as to Section 61(a) and Section 162(a) are of no significance in our determination of the law applicable to this case.

Nor can it be doubted that this section meant that in general, partners in partnerships that paid them a guaranteed salary or commission for services rendered to the partnership were required to treat the salary for all purposes as if received from an employer with which they had no relationship other than as employee.

In 1969, Congress enacted 26 U.S.C. § 1348 which, in material terms provided:
Section 1348
(a) General Rule.
This paragraph provided for a maximum tax rate of 50% on "earned taxable income."
(b) Definitions ...
(1) Earned income. The term earned income means any income which is earned income within the meaning of ... Section 911(b).

This then, brings into play Section 911(b) which, although predating the Code of 1954, became a part of Section 1348 by incorporation. It provides:
(b) Definition of earned income—
[T]he term "earned income" means ... salaries ... received as compensation for personal services actually rendered.... In the case of a taxpayer engaged in a trade or business in which both personal services and capital are material income-producing factors, under regulations prescribed by the Secretary, a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the *net profits* of such trade or busi-

ness, shall be considered as earned income.
26 U.S.C. § 911(b) (emphasis added.)

It is to be noted that this section expressly provides for regulations to be issued by the Secretary. Such regulations were issued, including the regulation under attack here, Section 1.1348–3 which, in its definitions section stated:

(3) *Earned income from business in which capital is material.*

(i) If an individual is engaged in a trade or business (other than in corporate form) in which both personal services and capital are material income-producing factors, a reasonable allowance as compensation for the personal services actually rendered by the individual shall be considered earned income, but the total amount which shall be treated as the earned income of the individual from such a trade or business shall in no case exceed 30 percent of his share of the net profits of such trade or business (*which share shall include any guaranteed payment (as defined by § 1.707–1(c) received from a partnership)*). For purpose of the preceding sentence, the term "net profits of the trade or business" means the excess of gross income from such trade or business (including income from all sources, whether or not subject to Federal income tax, and without taking into account any deductions which may be allowable under Section 1202) over the deductions attributable to such trade or business.

It is this regulation which the trial court found to be invalid because unreasonable and inconsistent with the statutory scheme. The inconsistency, if found, exists in the underscored language above. Section 707(c) of the Code provided that such payments as are involved here were to be considered as though made to a person not a member of the partnership. Under such circumstances they would be deductible as an expense of doing business, thus reducing the net profits of the partnership. Under this regulation, however, the concept of net profits would be changed because the

regulation stated that the net profits "shall include any guaranteed payment received by him." The taxpayer, of course, argues that the Secretary of the Treasury could not amend the statute, *i.e.*, Section 707(c), by giving a new definition to "net profits."

The government, to the contrary, argues that Section 911 is the only statutory provision that purports to deal with the taxation of partnership income where the partnership is one "in which both personal services and capital are material income producing factors;" that because of the difficulty faced by the Commissioner in determining what would be a reasonable allowance of compensation for personal services by partners under such circumstances the taxation of a partner's income from his partnership required special attention from the Congress. This attention was given by Section 911 of the Code and the government contends that the regulation carried out the policy of the Code Section.

There is no inconsistency between Section 707(c) and Section 911. Congress is fully empowered by enacting Section 1348 to prescribe special provisions with respect to the taxation of earned income by a member of a partnership as to which personal services and capital are material income-producing factors. Therefore, if Congress had stated in Section 911 that "the total amount which shall be treated as the earned income of the individual from such a trade or business shall in no case exceed 30% of his share of the net profits of such trade or business (which share shall include any guaranteed payment," this, it seems to us would merely be an amendment to Section 707(c) which for partnerships in general provided that such guaranteed income would be treated as income to an outsider. Here, however, Section 911 contained no such provision. It provided merely that the limiting factor should be "not in excess of 30% of his share of the *net profits* of such trade or business." (Emphasis added.)

At the time of the enactment of Section 1348, Congress had already provided under Section 707(c), in effect, that the net profits of such trade or business was to be computed by deducting as a business expense such guaranteed payment to a partner. Thus, when the regulation became effective, it expressly changed the meaning of "net income" without any statutory authorization.

The standard of review is as a question of law. However, we are conscious of the standard set by the Supreme Court dealing with the setting aside of Treasury Regulations:

> This Court has many times declared that Treasury Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes and that they constitute contemporaneous construction by those charged with administration of the statutes which should not be overruled except for weighty reasons. *See, e.g., Fawcus Machine Co. v. United States*, 282 U.S. 375, 378, 51 S.Ct. 144, 145, 75 L.Ed. 397.

*Commissioner v. South Texas Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

The trial court in this case found the regulation to be unreasonable and inconsistent with the statutory scheme stating,

> It creates a conflict between statutory Sections where none ought to exist, because in depriving Section 707(c) of its full force, it also deprives Section 911(b) of its plain meaning." "Net profits" is a figure arrived at after deducting business expenses such as salary to an outsider. Guaranteed payments to a partner are considered salary to an outsider. Therefore, "net profits" does not include guaranteed payments, and 911(b)'s thirty percent limit on Section 1348's maximum tax is simply inapplicable to them.

The government here relies heavily on the opinion of the Court of Appeals for the Second Circuit in *Kampel v. Commissioner*, 634 F.2d 708 (2d Cir.1980). In that case, which was similar in all respects to the case before us, the Court concluded that the regulation was valid because authorized under Section 911. It held that Sections 911 and 707(c) were merely allocation of income statutes. The Court took no

notice of the fact that the regulation contained a definition of net income that was inconsistent with the existing statute, *i.e.*, Section 707(c).

The trial court's opinion in this case was consistent with a decision by the Court of Appeals for the Sixth Circuit in *Zahler v. Commissioner*, 684 F.2d 356 (1982). In *Zahler*, the Court said:

> ... thus, in a trade or business (herein a partnership) which utilizes capital as a material income producing factor, income received by an individual engaged in this trade or business is subject to the 30% limitation of § 911(b), as incorporated in § 1348, if and only if such income represents "net profits" of the trade or business.

684 F.2d 356, 358.

The Court then held that under the existing statute, the guaranteed payments to the partner were to be deducted before net profits were to be computed. This decision was clearly based on the ground that the regulation was invalid as being inconsistent with Section 707(c) and was not specifically authorized by Section 911(b).

### III.   CONCLUSION

We agree with this result. This regulation was, to use the language of the Supreme Court in *Commissioner v. South Texas Co., supra*, "plainly inconsistent with the revenue statutes." 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948).

The judgment is AFFIRMED.