ARTHUR GUNDERSHEIM AND LORELEI J. GUNDERSHEIM, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2143–79.     Filed June 12, 1980.

Lorelei J. Gundersheim, pro se.
*Robert N. Armen,* for the respondent.

DAWSON, *Judge:* Respondent determined a deficiency of $2,130.80 in petitioners' Federal income tax for the year 1975. At issue is whether the petitioners, who bought shares in a cooperative apartment corporation, are entitled to a tax credit under section 44[1] for the purchase of a "new principal residence"

---

[1]All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue.

where the property was used for commercial purposes prior to its conversion to residential use.

## FINDINGS OF FACT

Most of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference.

*Arthur Gundersheim and Lorelei J. Gundersheim* (petitioners) are husband and wife who resided in McLean, Va., at the time their petition was filed in this case. They timely filed a joint Federal income tax return for 1975 with the Internal Revenue Service Center, Holtsville, N.Y.

In late 1974, a commercial property located at 43 West 13th Street, New York, N.Y., was acquired by Pronova Associates (Pronova), a partnership unrelated to petitioners. Prior to its acquisition by Pronova, the property was leased to various businesses for commercial purposes, a use consistent with New York zoning law. The property was a nine-story brick structure with basement, each floor containing approximately 5,000 square feet. It had never been used for residential purposes.

The purpose of Pronova's acquisition was to initiate a change of use of the premises from commercial to residential. Accordingly, Pronova terminated all commercial leases, formed a New York cooperative corporation (the Glass House Cooperative, Inc.), transferred title to the property to the cooperative corporation, and began the sale of interests in the corporation. The sale of Pronova's interests, as represented by shares, in the cooperative corporation began in November 1974 and concluded in December 1976. The purchase of cooperative shares entitled purchasers to occupy, by proprietary lease, that part of the premises related to the purchased shares.

Prior to March 26, 1975, Pronova, through the cooperative corporation, began taking measures to make the property suitable for residential use. Such measures included the installation of residential wiring and plumbing to be used in common by the eventual tenant-stockholders and the necessary partitions to create the desired number of apartments per floor.

In July 1975, petitioners contracted for the purchase of 100 shares in the cooperative corporation, entitling them to a 99-year proprietary lease for the use of the fourth floor of the property. At the time of purchase, no prior residential use of the fourth floor had occurred, the floor having been leased to a commercial

leather goods company. Petitioners paid $37,000 in cash on August 27, 1975, for the purchase of their 100 shares in the cooperative corporation. In addition, they paid a monthly maintenance charge, part of which was allocated to servicing the underlying mortgage indebtedness on the entire property.

Petitioners occupied the fourth floor as their principal residence in September 1975. At the time of occupancy, no improvements, other than the improvements which were designed to benefit all of the units in the cooperative, had been made to the residence. Thereafter, the petitioners engaged an architect and a contractor to complete the interior of the residence.

On their Federal income tax return for 1975, the petitioners claimed a section 44 credit of $2,000 for the "purchase of new principal residence." Respondent disallowed the credit on the ground that the residence was not new but renovated.

## OPINION

Section 44 provides in pertinent part:

(a) GENERAL RULE.—In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer.

    \*        \*        \*        \*        \*        \*        \*

(c) DEFINITIONS.—For purposes of this section—

(1) NEW PRINCIPAL RESIDENCE.—The term "new principal residence" means a principal residence (within the meaning of section 1034), the original use of which commences with the taxpayer, and includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, and a mobile home.

    \*        \*        \*        \*        \*        \*        \*

(e) PROPERTY TO WHICH SECTION APPLIES.—

(1) IN GENERAL.—The provisions of this section apply to a new principal residence—

(A) the construction of which began before March 26, 1975,

(B) which is acquired and occupied by the taxpayer after March 12, 1975, and before January 1, 1977, and

(C) if not constructed by the taxpayer, which was acquired by the taxpayer under a binding contract entered into by the taxpayer before January 1, 1976.

Section 1.44–5(a), Income Tax Regs., defines the term "new principal residence" as a principal residence the original use of which commences with the taxpayer. The regulation further defines "original use" to mean that the residence in question has

never been used as a residence prior to its use as such by the taxpayer. Finally, the regulation provides that a "renovated building" does not qualify as new, regardless of the extent of renovation, nor does a condominium conversion qualify.

The controversy here is whether a cooperative apartment in a building previously used for commercial purposes constitutes a "new principal residence" within the meaning of section 44(c) and section 1.44–5(a), Income Tax Regs. Respondent urges us to view this property as renovated property not subject to the section 44(a) credit. He argues that section 44 was aimed solely at the inventory of newly constructed homes. Moreover, respondent would define "original use" as meaning *first* use of the property without regard to any prior nonresidential use. Thus, arguing that the building was not new but merely renovated and that petitioners were not the first users of the property, respondent urges us to disallow the credit.

Petitioners, on the other hand, contend that they clearly fit within the statutory definition of "new principal residence" and are entitled to the section 44 credit. They dispute respondent's contentions that the renovation exception is applicable to them in view of the legislative purpose of the credit and in view of the statutory and regulatory definitions of "new principal residence" and "original use." They argue that the renovation exception applies only to buildings which previously served as residences, such as apartment conversions to condominiums or rehabilitated housing stock.

We agree with petitioners that they are entitled to the section 44 credit. The statute defines "new principal residence" as a principal residence the original use of which begins with the taxpayer. Sec. 44(c)(1). Original use, as defined in the regulations, means that such residence has never been used previously as a residence. Sec. 1.44–5(a), Income Tax Regs. We think the petitioners have satisfied this definition. Prior to the occupancy by the cooperative, the building had not been utilized for residential purposes. Upon adaptation which began prior to March 26, 1975, the building was converted to residential use and became part of the nation's new housing stock. Upon purchase and occupancy by petitioners in late 1975, the cooperative became the principal residence of petitioners and they were the original users of the property as a residence. The concept of "original use," as defined in the regulations and as we construe

it in the statute, means *original use as a residence*. We disagree with respondent that original use always means first use of property for any purpose. Compare sec. 1.167(j)–1(a)(2)(ii), Income Tax Regs. Of course, if the property had been previously used as a residence, then its purchase and occupancy by a taxpayer would not constitute original use. Likewise, a credit under section 44 would not be available for a condominium conversion since the apartment would have been previously used as a principal residence on a rental basis. Similarly, a rehabilitated dwelling would not qualify under section 44 since it would have previously been used as a principal residence.

Respondent points to congressional comments on the credit as indicating legislative intent to restrict the section 44 credit to only *newly* constructed residences. 121 Cong. Rec. S4223, 4483–4490, 4791 (daily ed. Mar. 22, 1975), and 121 Cong. Rec. H2382–2384, 2386–2389, 2397–2400 (daily ed. Mar. 26, 1975). We have examined the congressional comments and discussions and we do not think that this particular situation is excluded from the purview of section 44. It is clear that Congress sought to exclude the purchase of used homes or homes that were rehabilitated from section 44 applicability. Such exclusions, however, dovetail with the expressed congressional purpose of aiding the sale of existing inventories of new additions to the nation's housing stock.[2] We think that the conversion of a commercial property into a residential property results in a new addition to the nation's housing stock and, as such, falls within the ambit of section 44.

Respondent's final contention is that section 1.44–5(a), Income Tax Regs., excludes the purchase of any renovated *building* from section 44 applicability. Thus, since the commercial building, in respondent's view, was renovated, the petitioners are not entitled to the credit. In our judgment, this would be a misapplication of respondent's regulation. The entire thrust of the regulation speaks in terms of *residence*, not building, and, consequently, we construe the use of the word "building" to mean "residence." Such a construction is consistent with the statute and the preceding part of the same regulation.

---

[2] For an excellent discussion of the history of sec. 44, see *Dobin v. Commissioner*, 73 T.C. 1121 (1980).

Accordingly, we conclude that petitioners are entitled to the section 44 tax credit in the amount of $2,000.

To reflect the petitioners' concession of another issue,

*Decision will be entered under Rule 155.*

