STEVEN M. CYR AND BONNIE R. CYR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cyr v. Commissioner
Docket No. 18436-82.
United States Tax Court
T.C. Memo 1984-515; 1984 Tax Ct. Memo LEXIS 156; 48 T.C.M. (CCH) 1240; T.C.M. (RIA) 84515; September 27, 1984. Steven M. Cyr, pro se. Kathey I. Shaw, for the respondent. PARKER MEMORANDUM FINDINGS OF FACT AND OPINION PARKER, Judge: Respondent determined a deficiency in petitioners' Federal income tax in the amount of $1,863 for 1979. After a concession by petitioners, the sole issue for decision is whether the new principal residence credit claimed by petitioners in 1975 must be recaptured in 1979. This depends on whether the replacement residence purchased by petitioners was a "new principal residence" within the meaning of section 44(d)(2) of the Code. [1] FINDINGS OF FACT This case was submitted fully stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Steven M. and Bonnie R. Cyr, husband and wife, resided at 3125 S.W. 118th, Beaverton, Oregon, at the time they *159 filed their petition herein. Petitioners timely filed a joint Federal income tax return (Form 1040) for the 1979 taxable year with the Internal Revenue Service Center in Ogden, Utah. In Noember of 1975, petitioners purchased a "new principal residence" within the meaning of section 44(c)(1). Petitioners claimed a new principal residence credit in the amount of $1,747 on their 1975 Federal income tax return. Petitioners sold this residence in April of 1978. On April 1, 1978, petitioners purchased a residence at 3500 S.W. Vista Drive (the old house) that had previously been used by another family as a residence prior to the purchase by petitioners. Apparently, petitioners had purchased the lot located at 3500 S.W. Vista Drive, Portland, Oregon (the Vista Drive lot), and then removed the old house from its prior location and placed it on the Vista Drive lot. [2] After the old house was relocated onto the Vista Drive lot, it was substantially renovated.The foundation, basement, plumbing, wiring, drywall, floors, ceilings, and other components were reconstructed or newly constructed.However, the shell and framing of the old house remained intact. *160 Petitioners sold the Vista Drive residence on December 16, 1979. Since that date, petitioners have lived in their present residence at 3125 S.W. 118th, Beaverton, Oregon.[3] On May 26, 1982, respondent issued a statutory notice of deficiency to petitioners for their 1979 taxable year. In his notice, respondent determined that because petitioners disposed of the new principal residence for which they claimed a section 44 credict on their 1975 Federal income tax return within the proscribed 36-month period and failed to replace it with another qualified residence within the time limit prescribed by section 44(d)(2), petitioners must recapture the amount of such credit in the taxable year 1979. OPINION Section 44(a) provides that: In the case of an individual there is allowed, as a credit against the tax imposed by this chapter for the taxable year, an amount equal to *161 5 percent of the purchase price of a new principal residence purchased or constructed by the taxpayer. [Emphasis added.] For purposes of section 44, the term "new principal residence" is defined in section 44(c)(1) as follows: The term "new principal residence" means a principal residence (within the meaning of section 1034), the original use of which commences with the taxpayer, and includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, and a mobile home. [Emphasis added.] The same definition of "new principal residence" is found in section 1.44-5(a), Income Tax Regs.[4] This regulation further specifies that "original use" means that "such residence has never been used as a residence prior to its use as such by the taxpayer." The regulation also provides that "[a] renovated building does not qualify as new, regardless of the extent of the renovation * * *." *162 The parties agree that petitioners properly claimed and were allowed a new principal residence credit in the amount of $1,747 for their 1975 taxable year in connection with their purchase in that year of a new principal residence within the meaning of section 44(a). However, petitioners sold this residence less than 36 months from the date of their purchase. Therefore, section 44(d)(1)[5] requires petitioners to recapture the full amount of such credit unless they come within one of the statutory exceptions set out in paragraphs (2) and (3) of section 44(d). [6]
*163 Petitioners contend that their purchase of the Vista Drive residence on April 1, 1978, satisfies the requirements of section 44(d)(2), thereby exempting them from recapture. In pertinent part, section 44(d)(2) provides that: If, in connection with a disposition described in paragraph (1) and within the applicable period prescribed in section 1034, the taxpayer purchases or constructs a new principal residence, then the provisions of paragraph (1) shall not apply * * *. [Emphasis added.] Section 44(d)(2) thus allows a taxpayer 18 months [7] from the disposition of the residence for which a section 44 credit was allowed in which to either construct or purchase a new principal residence as defined in section 44(c)(1), and thereby avoid recapture. *164 Petitioners' primary argument is that the Vista Drive lot had never been previously used as a residential site; therefore the residence which resulted from placement of the old house onto the lot and its subsequent renovation constituted a new principal residence within the meaning of section 44(c)(1). Conversely, respondent argues that the use of the old house as a principal residence by others prior to its relocation and renovation by petitioners precludes its qualification as a new principal residence. We agree with respondent. We think it is clear that the term "residence" in the statutory phrase "a principal residence * * * original use of which commences with the taxpayer" refers to the structure used by the taxpayer as a dwelling place, not to the geographic location or street address at which such structure is so used. This conclusion is buttressed by section 44(c)(1) which, after stating the "original use" requirement, goes on to recite a number of types of structures, including a mobil home, without any reference to locations, which come within its purview. Changing *165 the site for a mobil home, for example, clearly would not convert the used mobil home into a "new residence." Any contention that the term "residence" as used in section 44 is concerned with the particular real estate upon which a dwelling structure is located, rather than with the dwelling structure itself, ignores the plain meaning of the statute. Our view is further supported by the legislative purpose of section 44. "Congress focused section 44 on the bulging inventory of already built, unsold homes as an attack on the doldrums in the housing industry. Section 44 was designed to stimulated and accelerate the sale of these homes." Dobin v. Commissioner,73 T.C. 1121, 1126 (1980). Petitioners' interpretation would add to the statutory and regulatory definition of "new principal residence" language that is not found in section 44(c)(1). [8] Petitioners' reading of the statute and the regulation is wholly inconsistent with and thwarts the narrow legislative purpose of the new principal residence credit. Section 44 was narrowly focused on the existing inventory of new but unsold houses. The legislative history indicates that the credit was designed *166 to aid the sale of these "new" additions to the nations' housing stock to reduce the glut of new housing then in existence. To allow petitioners to avoid the recapture provisions of section 44(d)(1) by the purchase of a "used" house merely because petitioners relocated and renovated it would defeat that purpose.For a thorough analysis of the legislative history of section 44, see Dobin v. Commissioner,supra,73 T.C. at 1124-1126. Thus, we conclude that the structure used as a residence is the focal point of the statute, not the structure's geographic site *167 or location. Consequently, the structure itself must satisfy the requirements of the statute, and a structure that otherwise fails to qualify as a new principal residence may not be made to do so by relocating the structure. The original use of the old house as a residence did not commence with petitioners. Therefore the Vista Drive residence, created by relocating the old house onto a previously nonresidential lot, was not transformed into a new principal residence within the meaning of section 44(c)(1) by such relocation. Petitioners argue that their extensive renovation of the old house after its relocation onto the Vista Drive lot somehow transformed it into a new principal residence despite the original use requirement of section 44(c)(1). In support of this contention, they assert that over 90 percent of the value of the renovated structure had never been used as a residence prior to petitioners' use. See footnote 2. Respondent, on the other hand, contends that section 1.44-5(a), Income Tax Regs., precludes a renovated residence from qualifying as a new principal residence. As noted above, section 1.44-5(a), Income Tax Regs. *168 , plainly states that "[a] renovated building does not qualify as new, regardless of the extent of the renovation * * *." We agree with respondent. Respondent has broad authority to promulgate all necessary regulations. Sec. 7805(a); Unied States v. Correll,389 U.S. 299, 306-307 (1967). The general rule regarding Treasury regulations is that they must be sustained unless they are unreasonable and plainly inconsistent with the statute. Commissioner v. South Texas Lumber Co.,333 U.S. 496, 501 (1948). A regulation is not a reasonable statutory interpretation unless it harmonizes with the plain language of the statute, its origins, and its purpose. National Muffler Dealers Assn. v. United States,440 U.S. 472, 477 (1979). Because regulations constitute contemporaneous constructions by those charged with administration of these statutes, they should not be overruled except for weighty reasons. Bingler v. Johnson,394 U.S. 741, 750 (1969); Commissioner v. South Texas Lumber Co.,supra,333 U.S. at 501. *169 Applying these rules to that portion of section 1.44-5(a), Income Tax Regs., dealing with renovated buildings, we find the regulation to be clearly reasonable and entirely consistent with the purpose underlying enactment of section 44. The legislative history of that section indicates that "[i]t is clear that Congress sought to exclude the purchase os * * * homes that were rehabilitated from section 44 applicability." Gundersheim v. Commissioner,74 T.C. 573, 577 (1980). Moreover, petitioners' reliance upon the holding in that case is unavailing. Gundersheim involved the conversion of a prior commercial property into a residential cooperative apartment and is distinguishable on its facts from the present case where an old house was renovated. That the renovation was extensive does not change the fact that the basic structure had previously been used as a residence by the prior owners. Petitioners also assert that our decision in Dobin v. Commissioner,supra, somehow supports the proposition that the original use as a residence of the house located on Vista Drive need not necessarily commence with *170 petitioners to qualify the house as a new principal residence under section 44(c)(1). Petitioners distill from a statement we made in Dobin v. Commissioner,supra, our purported willingness to recognize exceptions to the recapture rule of section 44(d)(1) in addition to those found in sections 44(d)(2) and (3).Petitioners are mistaken. In Dobin v. Commissioner,supra, we held that the taxpayers who had leased and occupied an otherwise qualifying new house as their principal residence before purchasing the property were entitled to a new residence credit under section 44. We so held in the face of respondent's argument that the credit is unavailable if the property was occupied by anyone, including the eventual owners, before March 12, 1975. Section 44(e)(1)(B) provides, as a prerequisite to entitlement to the credit provided for in section 44(a), that a new principal residence must have been "acquired and occupied by the taxpayer after March 12, 1975 and before January 1, 1977 * * *." However, as we stated in Dobin v. Commissioner,supra,73 T.C. at 1126-1127, *171 respondent's regulations under sections 1.44-2(b) (acquisition and occupany rules) and 1.44-5(a) (original use definition), Income Tax Regs., * * * recognize that houses occupied before March 12, 1975, by the eventual owner-occupant can qualify for the tax credit in at least two circumstances: where the occupancy was pursuant to a lease arrangement pending settlement of a binding contract to purchase; and where the occupancy was pursuant to a lease arrangement containing a written option to purchase. [Emphasis added.] It was in this context that we made the following statement incorrectly interpreted by petitioners: The regulations simply provide by way of example two situations where such occupancy will be countenanced. What other situations are equally as propitious and whether this case reflects one of those is not explicitly resolved by the regulations. [Fn. ref. omitted.] Dobin v. Commissioner,supra,73 T.C. at 1127. We merely suggested that there may be other situations in which occupancy of an otherwise qualified residence by the eventual owner-occupant prior to purchase thereof will not prevent satisfaction of the occupancy *172 and original use requirements. Petitioners have clearly misread our decision in Dobin v. Commissioner,supra, if they believe it states: (1) that there may be circumstances in which prior occupancy and use as a residence by someone other than the eventual owner-occupant does not preclude satisfaction of the original use requirement in section 44(c)(1); and/or (2) that we are willing to acknowledge exceptions to the recapture rule of section 44(d)(1) other than those specifically provided by Congress in sections 44(d)(2) and (3). Congress provided only two exceptions to the recapture requirement; we cannot and will not create a new exception for petitioners. In conclusion, not only is recapture of the previously claimed credit mandated in this case by the express terms of the statute and the pertinent regulations, but it is also in keeping with the congressional purpose behind the enactment of the new principal residence credit. To reflect the foregoing and petitioners' concession, [9]
Decision will be entered for the respondent.
*173 Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in question, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The parties' stipulation of facts is remarkably ambiguous and uninformative, although the fact situation in this case is of a type that should be readily ascertainable and susceptible of clear statement. Paragraphs 5 and 7 of the parties' stipulation state: 5. Petitioners purchased the residence at 3500 S.W. Vista Drive April 1, 1978; this residence had in fact been used by another family prior to the purchased by Petitioners. * * * 7. The parties stipulate that the purchased property at 3500 S.W. Vista Drive was in fact an old house moved onto the existing site. The foundation, plumbing, basement, wiring, drywall, ceilings, floors, and in fact all other structural commonents were newly constructed. The parties further stipulate that the shell and framing were in fact (sic) prior use and were used by another family prior to purchase by Petitioners. It is not clear whether petitioners or the prior owners had the old house moved to the site at 3500 S.W. Vista Drive. It is not clear whether petitioners purchased the old house and the lot in separate transactions or as a single transaction. It is not clear when the improvements were made. It is not clear whether the newly constructed components were constructed by petitioners, by the prior owners, or by someone else. Both respondent's counsel and petitioner Steven M. Cyr (who is an attorney representing himself and his wife) seem to assume facts in their briefs that they neglected to include in their stipulation of facts. Respondent's brief at one point states that petitioners purchased an old house which they moved to a new lot, but the stipulation fails to give the Court the benefit of such an unambiguous straight-forward statement of fact. Petitioners' reply brief does not challenge that statement by respondent, but goes far beyond the stipulated facts stating-- It appears inconsistent to state that a vacant lot ever had a prior use as a residence. While it is conceded that portions of the ultimate land and building had prior residential use, it is clear that the lot had no such prior use, that the daylight basement portion of the premises had no such prior use and that rooms added upon the old house being placed on the lot had no such prior use. To classify the instant case as being a renovation of a building is a misnomer. It is in fact a situation where at least ninety percent of the value of the resulting property had no prior use as a residence either at its present location or prior location. [Emphasis added.] These factual statements are ambiguous and unsupported by the stipulation. The Court does not understand the distinction petitioners draw between "the lot" and "the ultimate land." There is nothing in the record as to the "value of the resulting property," even assuming value is relevant. Petitioners' reply brief then complains that respondent has failed to offer "substantial argument or proof" as to what the property is or the prior residential use thereof. Petitioners bear the burden of proof in this proceeding and the fact that the case was submitted to the Court fully stipulated does not alter that burden. Sevice Bolt & Nut Co. Trust v. Commissioner,78 T.C. 812, 819 (1982), affd. 724 F. 2d 519 (6th Cir. 1983); Estate of Luehrmann v. Commissioner,33 T.C. 277, 281 (1959), affd. 287 F. 2d 10, 16 (8th Cir. 1961); Stevens v. Commissioner,T.C. Memo. 1980-521; Estate of Rapoport v. Commissioner,T.C. Memo. 1982-584↩, n. 3. In finding the facts, the Court has given the parties' stipulation a common-sense reading consistent with the literal words and the parties' shared assumptions in their briefs. However, the Court must disregard by statements about "daylight basement," added rooms, or value of "the resulting property" since these matters are wholly beyond the record.
3. Petitioners did not raise and we therefore do not address the issue of whether their residence at 3125 S.W. 118th satisfies the requirements of section 44(d)(2)↩.
4. Section 1.44-5(a), Income Tax Regs., provides, in pertinent part: (a) New principal residence.--The term "new principal residence" means a principal residence, the original use of which commences with the taxpayer. The term "principal residence" has the same meaning as under section 1034 of the Code. For this purpose, the term "residence" includes, without being limited to, a single family structure, a residential unit in a condominium or cooperative housing project, a townhouse, and a factory-made home. * * * "Original use" of the new principal residence by the taxpayer means that such residence has never been used as a residence prior to its use as such by the taxpayer. For this purpose, a residence will qualify if the first occupancy was by the taxpayer pursuant to a lease arrangement pending settlement under a binding contract to purchase or pursuant to a lease arrangement where a written option to purchase the then existing residence was contained in the original lease agreement. A renovated building does not qualify as new, regardless of the extent of the renovation↩ * * *. [Emphasis added.]
5. Section 44(d)(1) provides that: Except as provided in paragraphs (2) and (3),↩ if the taxpayer disposes of property with respect to the purchase of which a credit was allowed under subsection (a) at any time within 36 months after the date on which he acquired it (or, in the case of construction by the taxpayer, on the day on which he first occupied it) as his principal residence, then the tax imposed under this chapter for the taxable year in which terminates the replacement period under paragraph (2) with respect to the disposition is increased by an amount equal to the amount allowed as a credit for the purchase of such property. [Emphasis added.] 6. Section 44(d)(2) provides that: If, in connection with a disposition described in paragraph (1) and within the applicable period prescribed in section 1034, the taxpayer purchases or constructs a new principal residence, then the provisions of paragraph (1) shall not apply and the tax imposed by this chapter for the taxable year following the taxable year during which disposition occurs is increased by an amount which bears the same ratio to the amount allowed as a credit for the purchase of the old residence as (A) the adjusted sales price of the old residence (within the meaning of section 1034), reduced (but not below zero) by the taxpayer's cost of purchasing the new residence (within the meaning of such section) bears to (B) the adjusted sales price of the old residence. Petitioners do not rely upon the exception in section 44(d)(3)↩.
7. Section 44(d)(2) adopts the provisions of section 1034 in fixing the time period within which a taxpayer may purchase or construct a new principal residence and thereby avoid recapture of a previously allowed section 44 credit arising from premature disposition of the residence for which the credit was allowed. For the taxable years at issue herein, section 1034(a) provided for a replacement period beginning 18 months before, and ending 18 months after, the disposition of the residence for which the section 44 credit was allowed. We note that section 122(a) of the Economic Recovery Tax Act of 1981 (ERTA), Pub. L. 97-34, 95 Stat. 172, 197, 1981-2 C.B. 256, 271, increased the replacement period to two years before and after the disposition date for dispositions after July 20, 1981, and for dispositions on or before July 20, 1981, if the former 18-month period expires on or after such date. See sec. 122(c) of ERTA, supra,↩ 95 Stat. at 197, 1981-2 C.B. at 271.
8. Petitioners' interpretation of the statute would be as follows: "The term 'new principal residence' means a principal residence (within the meaning of section 1034), the original use of which, at its location when used by the taxpayer, commences with the taxpayer * * *." Similarly, petitioners would add to the regulation defining original use ( sec. 1.44-5(a), Income Tax Regs.) the following underscored language so that it would read: "such residence has never been used as a residence prior to its use as such by the taxpayer at the location so used by the taxpayer.↩"
9. Petitioners also seek to recover attorney's fees from respondent. This Court has no authority to grant such fees in this case. McQuiston v. Commissioner,78 T.C. 807 (1982), affd. without published opinion 711 F. 2d 1064 (9th Cir. 1983). We note that under new section 7430, added to the Code by section 292(a) of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, 572, 1982-2 C.B. 462↩, 546-547, we do have authority to award reasonable litigation costs to a "prevailing party" in proceedings commenced in this Court after February 28, 1983. See also Rules 230-233. The petition in this case was filed July 19, 1982, and in any event petitioners are not the "prevailing party" in this case.